540 So.2d 26 (1989)
L.G. SHAW
v.
STATE of Mississippi.
No. 58296.
Supreme Court of Mississippi.
February 27, 1989.
William R. Fortier, Fortier & Rich, Ripley, for appellant.
Mike Moore, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, ANDERSON and ZUCCARO, JJ.
*27 ANDERSON, Justice, for the Court:
This is an appeal from the September 12, 1986, judgment of the Benton County Circuit Court wherein L.G. Shaw was convicted of manslaughter and sentenced to twenty years' imprisonment with five years suspended. Shaw assigns four errors by the trial court. In affirming, we find it necessary to address only two of those assignments.
Shaw was indicted for murder. At trial, the state's evidence indicated that Shaw, who was angry because his goat had been shot earlier in the day, went to a gambling establishment in North Benton County around 9 p.m. on November 27, 1985, and approximately one-half hour later, without provocation, shot and killed J.B. Richardson. Shaw's testimony was that he shot Richardson in self defense as Richardson was approaching him with a knife. On this evidence, the jury returned its manslaughter verdict.

I. DID THE TRIAL COURT ERR IN EXCUSING FOR CAUSE JUROR OSCAR NUNNALLY AT THE CONCLUSION OF CLOSING ARGUMENTS?
During voir dire Lawrence Little, who was then a Third Circuit Assistant District Attorney, asked the following questions:
I'm one of the assistant district attorneys for our Third Circuit Court here in North Mississippi. I have been doing this for a period of several months and do any of ya'll know me? I don't believe any of you do. I don't recognize anyone. I live in Oxford. Have any of your families ever been involved in any way in a case that our district attorney, Mr. Kenneth Coleman or Mr. John Gregory, the other assistant district attorney, has prosecuted? Have any of ya'll ever been involved with any of that? ...
Venireman Oscar Nunnally did not reply.
At the conclusion of the trial, after both sides had given their closing arguments, but before the jury retired to deliberate, there was an in-chambers conference during which the state moved to have Nunnally excused for cause because Nunnally did not respond to the above noted question during voir dire. The state noted that Nunnally "was indicted by a grand jury of Benton County, Mississippi, was served with a capias, and I have in my hand Benton County file 2813, styled State of Mississippi v. Oscar Nunnally wherein it is charged that Oscar Lee Nunnally committed a crime of murder of one Jake Nunnally." Defense counsel pointed out that Nunnally's case was retired to the file and never brought up. He argued that Nunnally could not have been expected to answer the voir dire question in light of the way in which it was phrased. Defense counsel also argued that Nunnally properly did not answer the question since he was innocent until proven guilty. Finally, defense counsel argued that removing Nunnally would violate Batson v. Kentucky. The trial court sustained the state's motion stating that Nunnally would be excused "because he did not respond to the voir dire of the jury."
On appeal, Shaw argues that the trial court's action violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and, further, that the trial court did not have grounds to excuse Nunnally for cause. The state rebuts by arguing that the court's ruling was correct as to the sufficiency of the showing of cause and that Batson applies to peremptory challenges not to challenges for cause.
Shaw's Batson argument is without merit. First, and as the state notes, Batson applies to the state's use of peremptory challenges and not to the court's excusals for cause. Second, except for defense counsel's statement to the trial court that Juror Nunnally was the only black juror, the record is silent on the racial composition of the venire and the final jury panel. Batson was not raised during the jury selection process, and Shaw's case was tried over four months after the United States Supreme Court's Batson decision was rendered. Therefore, any challenge to the racial composition of the jury is waived.
Turning to the issue of the sufficiency of the showing of cause, Mississippi Code Annotated, Section 13-5-67 (1972) in pertinent part provides:

*28 ... Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties.
One question before this Court, then, is whether the regular juror, Nunnally, became disqualified. The statute governing the disqualification of veniremen does not include a disqualification where a venireman has been indicted, but not convicted. See, MCA § 13-5-1 (1972) which defines "competent jurors."
However, the dismissal of a juror for good cause and his replacement with an alternate is within the sound discretion of the trial judge. Stevens v. State, 513 So.2d 603, 604 (Miss. 1987), citing Russell v. State, 220 So.2d 334 (Miss. 1969) and MCA § 13-5-67 (1972).
In our opinion, the trial court erred in summarily excusing the regular juror. The trial court should have conducted a hearing in chambers and made certain fact determinations. For example, was the voir dire question ambiguous? Should the juror have known that the question might apply to him?
Nevertheless, Stevens and Russell, supra, also require that the defendant show actual prejudice resulting from the excusal and substitution. Stevens, 513 So.2d at 605, Russell, 220 So.2d at 337. There is nothing in the record to indicate that the trial court's action, in excusing juror Nunnally and replacing him with an alternate juror, denied Shaw his right to a fair and impartial jury or in any other way prejudiced him. We therefore hold that the trial court's error was harmless.

II. DID THE TRIAL COURT ERR IN GIVING ADDITIONAL INSTRUCTIONS TO THE JURY DURING ITS DELIBERATIONS?
The record on this issue is sketchy. The following relevant instructions were given to the jury before it retired.
Instruction S-1
The Court instructs the Jury that the Defendant, L.G. Shaw, has been charged by indictment with the crime of murder for having caused the death of J.B. Richardson with a deliberate design to kill J.B. Richardson.
If you find from the evidence in this case beyond a reasonable doubt that:
(1) The deceased, J.B. Richardson, was a living person, and
(2) the defendant, L.G. Shaw, did wilfully and of a deliberate design and of his malice aforethought kill J.B. Richardson by pointing, aiming and firing a gun at him intending to kill him,
then you shall find the Defendant, L.G. Shaw, guilty of murder.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty of murder.
Instruction S-2
The Court instructs the jury that if you find that the State has failed to prove any one of the essential elements of the crime of homicide, you must find the Defendant not guilty of homicide and you will proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of manslaughter.
The crime of homicide is distinguished from the crime of manslaughter by the absence of failure to prove deliberate design.
The jury was also given Instruction D-3 which reads:
Deliberate design means intent to kill, without authority of law and not being legally justifiable, legally excusable, or under circumstances that would reduce the act to a lesser crime.
Finally, the jury received a textbook instruction on self-defense.
The record reflects that at some point after it retired, the jury requested additional instruction on murder and manslaughter. Also, at some unknown point in time after the jury retired, the following appears in the record:
THE COURT: Defense objects to it, and the Court's going to grant it.

*29 MR. FORTIER: Your Honor, could I state my reason for objection ...
THE COURT: Yes, sir.
MR. FORTIER: ... very quickly into the record.
Defense would object to Instruction S-10 for the reason that the State never requested the giving of this instruction prior to trial or at any time during the trial, and if the instruction is given to the jury, at this time, when they are already in the middle of their deliberations, it'll place undue influence on this particular instruction over and above other instructions given.
Also, under the Mississippi Rules of Circuit Court Practice Criminal Procedure, instructions are to be provided to the defense within twenty-four hours in advance for review and possible rebuttal instructions, and the filing of the instruction, at this time, does not allow the defense any sufficient time to consider other instructions to rebut same.
THE COURT: And Miss Carole, if you will, I read that S-10. I'm going to renumber that to C-10 for this reason, the jury was requested additional instructions in the nature of further explanation as to the crime of murder and manslaughter, and the Court is also granting C-11 at this time.
Responding to the jury's request for further instruction, the trial judge addressed the jury after the lunch break. He first cautioned the jury that the new instructions were to be considered in conjunction with the other instructions and not singled out. Then he re-read Instructions S-1 and S-2 and read Instructions C-10 and C-11. Copies of C-10 and C-11 were then given to the jury. The jury returned its manslaughter verdict approximately 24 minutes later. Instruction C-10 reads:
The Court instructs the Jury that if death is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, then malice may be inferred from the use of the weapon.
Instruction C-11 provides:
The Court instructs the jury that the crime of homicide is distinguished from the crime of manslaughter by the absence of failure to prove deliberate design.
The defendant, L.G. Shaw, has been charged by an indictment with the crime of murder for having caused the death of J.B. Richardson
1. in the heat of passion, and
2. in a cruel or unusual manner, or
3. by the use of a dangerous weapon, and
4. not in necessary self-defense.
If you find from the evidence in this case beyond a reasonable doubt that
1. the deceased, J.B. Richardson, was a living person and
2. he died as a result of L.G. Shaw having pointed, aimed and fired a gun at J.B. Richardson, by the use of a deadly weapon, and
3. while L.G. Shaw drew his gun and fired at J.B. Richardson, and
4. not in necessary self-defense,
then you shall find the defendant guilty of manslaughter.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.
The defendant advances two arguments. First, he argues that granting Instructions C-10 and C-11 contravened Rule 5.03 of the Uniform Criminal Rules of Circuit Court Practice. Rule 5.03 in pertinent part provides:
At least 24 hours prior to the time that a case is set for trial, each of the attorneys shall number and file his jury instructions with the clerk and submit to opposing counsel a numbered copy of the instructions so filed in the case... . Instructions will not be given after argument has begun except in extreme cases of injustice and in such cases, the adverse parties shall have an opportunity to submit other instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have not been pre-filed in accordance with the above.
We have held that failure to follow the dictates of Rule 5.03, Crim.R.Cir.Ct.Prac., *30 will not lead to reversal absent actual prejudice to the defendant. Carter v. State, 493 So.2d 327, 331 (Miss. 1986). While it is not at all clear to this Court on this record that the trial court did, in fact, accept untimely requested instructions, we turn to Shaw's second argument, his allegation of prejudice.
The defendant argues that by re-reading Instruction S-2 and giving Instructions C-10 and C-11, the trial court over-emphasized the crime of manslaughter and therefore, singled it out.
In Wright v. State, 512 So.2d 679, 681 (Miss. 1987), we stated:
We have considered the question of supplemental instructions after a jury has retired on a number of occasions. See, e.g., Isom v. State, 481 So.2d 820 (Miss. 1985); Haynes v. State, 451 So.2d 227 (Miss. 1984); Girton v. State, 446 So.2d 570 (Miss. 1984); Newell v. State, 308 So.2d 71, 77-78 (Miss. 1975). Suffice it to say that this area has not been free of trouble, as we are particularly sensitive to the danger that a supplemental instruction might cause a jury to single out and focus on the point they are presented and give it undue importance.
Under the circumstances of this case, the circuit court acted quite properly. Nothing in our law provides that once the jury retires, the trial judge should become a mute. Where, as here, the jury was apparently at a loss as to how it should proceed, there is no rational reason why we should discourage our trial judges from providing supplementary guidance.
The cases cited in Wright, supra, make clear that our decisions on whether a particular point has been singled out through supplemental instructions often turn on the manner in which they were presented to the jury. Here, the trial court cautioned the jury that it was to consider the new instructions along with the original instructions and not to single them out. Further, the supplemental instructions ran the gamut from murder to manslaughter and, therefore, did not single out manslaughter. For these reasons, there was no prejudice to the defendant.
Nevertheless, we are compelled to point out certain deficiencies in the instructions in the hope that such mistakes do not recur. First, we can understand why the jurors might have needed supplemental instruction on manslaughter, since, as a result of what was surely a typographical error, they were told that manslaughter differed from murder by "the absence of failure to prove deliberate design." (emphasis ours) Second, some of the instructions refer to the crime of murder while others refer to the crime of homicide. The error in labeling murder as "homicide" should be apparent. Third, Instruction C-11 begins with a complete misstatement of the elements of murder. The four elements listed are the elements, word for word, of heat-of-passion manslaughter defined in MCA § 97-3-35 (1972). Obviously, while the defendant could have been greatly prejudiced by this misstatement, he was not.
AFFIRMED.
ROY NOBLE LEE, C.J., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., concurs in part I and dissents to part II.
PITTMAN, J., not participating.