# IN THE COURT OF APPEALS 02/25/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-KA-00927 COA

**WILLIE JOE FLOWERS**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. GEORGE C. CARLSON, JR.

COURT FROM WHICH APPEALED: PANOLA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

JOHNNIE E. WALLS, JR.

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY: DEIDRE MCCRORY

DISTRICT ATTORNEY: ROBERT L. WILLIAMS

NATURE OF THE CASE: CRIMINAL

TRIAL COURT DISPOSITION: DEFENDANT CONVICTED OF MANSLAUGHTER AND SENTENCED TO 20 YEARS

BEFORE THOMAS, P.J., PAYNE, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT:

Defendant, Willie Joe Flowers was convicted of manslaughter in the Panola County Circuit Court. On appeal he argues that the Court erred in giving the jury a supplemental instruction three hours into deliberation that defined the word "imminent." We disagree and affirm.

FACTS

On the evening of March 7, 1994, Willie Joe Flowers, Charlie Thornton, and Danny Hughes were gambling by shooting dice in Batesville, Mississippi. At some point, the game moved to Hughes's house in Memphis. After Flowers won a substantial amount of money from Hughes, Hughes went outside and backed his car in a position so that Flowers's vehicle could not depart, then came back in and continued gambling. Whether Hughes' intent was to prevent Flowers' departure was in dispute.

Fearing that he was in danger, Flowers became nervous and lost all the money that he had earlier won. Flowers then borrowed several thousand dollars from Hughes, which he immediately lost. After several loans, Hughes demanded payment from Flowers and accompanied the demand with threat: if Flowers didn't have the money, then Hughes would harm him or his family.

Flowers, accompanied by Thornton and Hughes, traveled back to Batesville to the home of Flowers's mother. While Flowers went inside to ask his brother for a loan, Thornton and Hughes went to Kentucky Fried Chicken. Flowers' brother did not have the money, but suggested that they go to another friend's house and secure a gun for protection. They did so.

When Thornton and Hughes returned, Hughes demanded his money. Flowers told him that he did not have it. Hughes forced him to get into the back seat of the car, threatening to hurt him if he refused. Flowers got into the back seat, and Hughes continued to threaten him. Fearing for his life, Flowers shot Hughes. After Hughes was shot, both Flowers and Thornton jumped from the moving car, which wrecked. Flowers retrieved Hughes's dead body, put it in the trunk of the car, and deposited it in a water-filled ditch. Flowers then returned to his mother's house, revealed to her what he had done, and decided to turn himself in to the local authorities.

Flowers was indicted and tried for capital murder and kidnapping.

At the conclusion of the evidence, after deliberating for three hours, the jury sent a note to the trial judge which stated, "(P)lease explain C13-A. Imminent versus immediate, definition, and the rest of the paper." After discussing the note with counsel, the court sent a note to the jury stating,

"(M)embers of the jury, I cannot explain this instruction further." Almost immediately, the jury sent another note requesting a dictionary and a thesaurus.

In response, the court gave a supplemental jury instruction, over defendant's objection, which stated:

C-15

Based on your second request, I will attempt to assist you. According to Webster's New World Dictionary, Third College Edition, the word "imminent" is defined as "likely to happen without delay;

impending; threatening." I do not feel that the word "immediate" should be defined, but instead you may apply to that word your perceived common usage.

I must caution you that this additional instruction must be read with all the other instructions, since I have previously instructed you that you should not single out one instruction alone as stating the law, but instead the instructions must be read together and considered as a whole. Also, I remind you that you must apply all the law to the facts in this case as you find the facts to be from the evidence before you.

The jury convicted Flowers of manslaughter and found him not guilty of kidnapping.

DISCUSSION

On appeal, this Court does not review jury instructions in isolation; rather, they are read as a whole to determine if the jury was properly instructed. If the jury was adequately instructed, even if not perfectly instructed, this Court will not reverse. *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996). Flowers argues that the court erred in giving this supplemental instruction because the jury likely gave it more weight than the other instructions.

In *Wright v. State,* 512 So. 2d 679 (Miss. 1987), the court gave a supplemental jury instruction, over the defendant's objection, after the jury requested further explanation of "breaking and entering." The Mississippi Supreme Court stated that "we are particularly sensitive to the danger that a supplemental instruction might cause a jury to single out and focus upon the point there presented and give it undue importance." *Wright,* 512 So. 2d at 681. Nevertheless, the court held the instruction was properly given, being a correct statement of the law and stating that the jury was to consider all of the instructions together. *Id.*

The Mississippi Supreme Court also addressed this issue in *Shaw v. State*, 540 So. 2d 26 (Miss. 1989), where a supplemental instruction was given on the distinction between murder and manslaughter. In *Shaw*, the court stated the decision as to whether a particular point has been singled out through supplemental instructions often turns on the manner in which the instruction was presented to the jury. *Shaw,* 540 So. 2d at 30. The court affirmed, holding it was proper to caution the jury not to single out the instruction, but to consider the new instructions along with the original instructions. *Id.*

Flowers argues that the instruction confused the jury on the issue of self defense and, by defining the word "imminent" from Webster's Dictionary, was not necessarily shown to comply with Mississippi law. In fact, the Mississippi Supreme Court has defined "imminent." *Holmes v. State*, 24 So. 2d 90 (Miss. 1945), *overruled on other grounds by Flowers v. State*, 473 So. 2d 164 (Miss. 1985). In *Holmes*, the court defined the word to mean ". . . threatening to occur immediately; near at hand; impending." *Holmes*, 24 So. 2d at 92, citing Webster's New International Dictionary, Unabridged (2d Edition).

The supplemental instruction given in this case correctly defined the word "imminent," and it was not confusing to the jury. The court warned the jury to consider the instruction with the others, and the trial court did not err in giving it.

Finally, Flowers also argues that it was error to send the instruction to the jury in writing rather than to read it aloud in open court. Flowers failed to raise this issue at trial and, therefore, waived his right to raise it on appeal. *McNeal v. State*, 617 So. 2d 999, 1005 (Miss. 1993); *Roundtree v. State*, 568 So. 2d 1173, 1177 (Miss. 1990).

**THE JUDGMENT OF THE PANOLA COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF 20 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $200 TO MISSISSIPPI CRIME VICTIMS' FUND IS AFFIRMED. ALL COSTS ARE ASSESSED TO APPELLANT.**

**BRIDGES, C.J., MCMILLIN AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, AND PAYNE, JJ., CONCUR.**

**HERRING, J., NOT PARTICIPATING.**