928 So.2d 867 (2005)
Terry Louis WILLIAMS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01933-COA.
Court of Appeals of Mississippi.
September 6, 2005.
Rehearing Denied January 17, 2006.
Certiorari Denied May 11, 2006.
*868 John David Weddle, Tupelo, J. Dudley Williams, Aberdeen, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., MYERS and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. Terry Louis Williams, Jr. was convicted of rape by a jury in the Monroe County Circuit Court and sentenced to twenty years in the Mississippi Department of Corrections. On appeal, he challenges the trial court's supplemental instruction to the jury which defined "actual penetration"; he contends that the supplemental instruction singled out and gave undue prominence to evidence concerning penetration without re-instructing the jury as to the other elements needed to establish the offense of rape and that, when plainly read, the supplemental instruction stated that the offense was established by penetration alone. Finding no abuse of discretion in the court's giving the supplemental instruction, we affirm.

STATEMENT OF FACTS AND COURSE OF PROCEEDINGS IN THE CIRCUIT COURT
¶ 2. N.B. testified that on March 7, 1998, when she was fifteen years of age, the defendant, Terry Williams (Williams), aged eighteen, and Patrick Williams[1] (Patrick) picked her up at her home with the express purpose of going to the house of her cousin in order that the female cousin and Patrick might be introduced. Instead of going to the cousin's house, however, Williams picked up Patrick's brother, Tito, and then drove to the Jr. Food Market where one of the men purchased beer. From there, they proceeded to the home of Timothy Howell. Although N.B. was hesitant to go inside the house as she was aware that Howell's parents were not at home, she was eventually persuaded to get out of the car. The five watched television and drank a little beer. The men then went outside and smoked marijuana. *869 When they returned, they began making sexually explicit remarks to N.B., grabbed her and took her to a back bedroom. Patrick and Timothy held N.B.'s arms while Tito and Williams, who had exposed themselves, pried her legs apart and held them down. N.B. began crying and asking the men to stop.
¶ 3. N.B. testified that Williams "was trying to force hi[m]self inside of me, but I was fighting, so he couldn't really get it all the way in, but he got the head in ... [m]ore than once." She further testified that in response to her "screaming, kicking, and fighting," Williams slapped her and held his hand over her mouth to keep her from screaming. N.B. testified that Williams eventually stopped, and she "guess[ed] . . . he climaxed." N.B. got up, threw on her clothes, and ran out of the house and down the street.
¶ 4. N.B. recounted that Williams caught up with her and told her that he was going to take her home. She agreed to let him take her home because "I didn't know where I was. I didn't know anyone in the neighborhood ... and I was afraid." When asked why she would allow the man who raped her to take her home, she responded, "I just wanted to get home." N.B. testified that during the ride, Williams told her he was sorry and that he did not want to go to jail. When she arrived home, N.B. immediately informed her mother that she had been raped; her mother called the police and followed instructions to take N.B. to the hospital in order that a rape test might be performed.
¶ 5. All four men were indicted on the charge of rape. Prior to trial, Patrick, Tito and Timothy pleaded guilty to conspiracy to commit rape and agreed to testify at any subsequent trial. Tito and Timothy were each sentenced to five years in prison with three years suspended, while Patrick was sentenced to five years probation.
¶ 6. Each of the three admitted to holding N.B. down in some manner before leaving the bedroom. Tito and Timothy both testified that Williams told the other men, "I got this," at which point they left Williams and N.B. alone in the room. Patrick testified that he left the room sometime before. Thus, while all three men testified for the State, none actually saw Williams rape the victim as they had all left the room on or before Williams's telling them, "I got this." Patrick and Tito both testified that they heard N.B. laughing and then screaming. Timothy testified that he heard N.B. crying. Patrick testified that N.B. and Williams emerged from the bedroom three to five minutes after Tito and Timothy. Timothy testified that Williams informed him, "Nothing didn't go on. Nothing didn't go on." Patrick testified that he told the police that Williams informed him that "he tried to put it in but couldn't."
¶ 7. Officer Quinell Shumpert, an investigator with the Aberdeen Police Department, testified that the rape test did not reveal the presence of semen and that there was no physical evidence of penetration. Officer Shumpert further testified that after being given a Miranda warning, Williams gave a statement to the effect that he went outside on the porch while the others were watching television and that sometime later N.B. "came out crying, upset, face . . . red, her hair .. . messed up" and asked him to take her home, which he did. Williams did not testify on his own behalf at trial.
¶ 8. By Instruction C-8, the court instructed the jury:
If you find from the evidence in this case beyond a reasonable doubt that:
1) The defendant ... did on March 7, 1998 ...

*870 2) willfully, unlawfully, and feloniously;
3) Forcibly rape and ravish [N.B.];
4) By actual penetration of her private parts;
5) Without [N.B.]'s consent, then you may find the defendant ... guilty of rape.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant . . . not guilty.
Two of the court's instructions informed the jury not to "single out" any particular instruction. C-1 advised, "You, as jurors, are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole." Similarly, C-6 instructed:
If in stating the law to you, I have repeated any rule, direction, or idea, or if I have stated the same in varying ways, no emphasis is intended and you must not draw any inference therefrom. You are not to single out any certain witness or individual point or instruction and ignore the others.
¶ 9. Two-and-a-half hours into deliberations, the jury sent a note to the judge asking him to "Define actual penetration." Over the objection of defense counsel,[2] the judge responded by sending the jury a supplemental instruction that read as follows: "As to the definition of actual penetration, to establish the offense of rape, the State must prove beyond a reasonable doubt that there was some penetration of the victim's vagina by the defendant's penis, however slight." The jury returned a verdict of guilty within eight minutes of receiving the supplemental instruction.

ISSUE AND ANALYSIS
WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING THE SUPPLEMENTAL JURY INSTRUCTION
¶ 10. On appeal we consider only the issue of whether the supplemental instruction defining "actual penetration" was proper, or whether the court's issuance of this instruction constituted reversible error. In regard to the appropriate standard of review for supplemental jury instructions, the Mississippi Supreme Court has stated:
Our inquiry ... is not whether the circuit judge ruled contrary to what one of us might have ruled, not whether he was "right" or "wrong" in our view, but whether he abused his discretion. And, unless the trial court based its decision on an erroneous view of the law, we are not authorized to reverse for an abuse of discretion unless we find it was "arbitrary and clearly erroneous."
Mickell v. State, 735 So.2d 1031, 1033(¶ 7) (Miss.1999).
¶ 11. Our supreme court has also stated, "As a general proposition, the trial judge should not give undue prominence to particular portions of the evidence in the instructions." Sanders v. State, 586 So.2d *871 792, 796 (Miss.1991). Any instructions that would amount to a comment on the weight of the evidence by emphasizing any particular testimony are improper. Mickell, 735 So.2d at 1033(¶ 9).
¶ 12. This case presents a close question. On the one hand, the Mississippi Supreme Court has held that "instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." Howell v. State, 860 So.2d 704, 761 (¶ 203) (Miss.2003). In the instant case, the court's instructions to the jury prior to their initial deliberations twice advised them not to "single out" any particular instruction.
¶ 13. On the other hand, our supreme court is "particularly sensitive to the danger that a supplemental instruction might cause a jury to single out and focus upon the point there presented and give it undue importance." Wright v. State, 512 So.2d 679, 681 (Miss.1987). While "[n]othing in our law provides that once the jury retires, the trial judge should become a mute," the propriety of supplemental instructions "often turn[s] on the manner in which they were presented to the jury." Shaw v. State, 540 So.2d 26, 30 (Miss.1989) (quoting Wright, 512 So.2d at 681). In Wright, the conviction was affirmed where the supplemental instruction, which defined "breaking," began with "one of the essential elements of the crime of burglary which must be proven beyond a reasonable doubt is a breaking" and concluded with an admonition to "[r]ead and consider this instruction along with your other instructions." The court found that this final language "appropriately dealt with" the "problem normally attendant upon supplemental instructions...." Wright, 512 So.2d at 681. In Shaw, the court found no error in the supplemental instruction where the trial judge cautioned the jury to consider the new instruction along with the original instructions and not to single out any one instruction. Shaw, 540 So.2d at 30. In Thornton v. State, 841 So.2d 170, 177-78(¶ 34) (Miss.Ct.App.2003), one of the matters we considered in affirming the conviction was the trial court's admonition before sending the jury back for further deliberations to "read and take all of these instructions as a whole. Although the court has reread two instructions and is giving a new instruction, you are not to single out any one instruction over the others, and they are to be considered as a whole." In the instant case, the trial court only defined the term "actual penetration" without any prefatory comment that it was only one of the elements of the offense of rape or any concluding language cautioning the jury not to single out any one instruction.
¶ 14. The question in this case is whether the circuit judge abused his discretion in issuing the supplemental instruction without prefatory and/or concluding language similar to that found in Wright. Under the circumstances of this case, we think not.
¶ 15. As stated above, the trial judge granted a supplemental instruction defining "actual penetration" at the jury's specific request. Had the jury not been following instruction C-8 which listed all of the elements of the offense of rape, they would not have known to ask for the definition. Williams claims that giving the supplemental instruction was an abuse of discretion because the instruction gave undue prominence to evidence concerning penetration without re-instructing the jury as to the other elements needed to establish the offense of rape and that, when plainly read, the supplemental instruction stated that the offense was established by penetration alone. While it certainly would have been better procedure to remind the jury that penetration was only *872 one element of the offense and that all of the instructions, including the supplemental one, should be considered as a whole, we cannot find reversible error.
¶ 16. We also find that, while there is no prefatory language as extensive as that in Wright, the court did unmistakably tie the supplemental instruction to the other elements of rape listed in the original instructions. The supplemental instruction began with the language "[a ]s to the definition of actual penetration, ...." (emphasis added). This language showed that the supplemental instruction was not meant to encompass the entire offense of rape. Rather, it was merely an explanation and clarification of one of the elements listed in the original jury instructions.
¶ 17. The jury request makes it clear that the jury was struggling only with the definition of actual penetration. "Actual penetration" was not defined in any of the initial jury instructions, but it was listed among the elements of rape in jury instruction C-8. The jury did not question the judge as to any of the other elements of rape which were given in jury instruction C-8. This Court can only assume that the jury had evaluated all of the other elements of rape fairly and objectively, and that the jury understood these other elements of rape and felt those elements had been met. The only element of rape of which the jury was uncertain was "actual penetration," so they requested a definition. The trial judge gave a correct definition of "actual penetration" to the jury based on decisions of the Mississippi Supreme Court.[3] The jury had been twice instructed prior to initial deliberations to read all instructions together and to not single out one instruction from the others. We find that since "actual penetration" was not defined previously for the jury, that this instruction was proper so that the jury could make an informed and careful decision regarding Williams's guilt.
¶ 18. The decisions of other jurisdictions are consistent with our opinion. In State v. Forbes, the Tennessee Court of Criminal Appeals acknowledged that a trial court has authority to respond to jury questions with supplemental instructions, and added "[w]hile the better procedure is to admonish the jury not to place undue emphasis on the supplemental instruction and to consider it in conjunction with the entire charge, it is not necessarily reversible error to fail to do so." State v. Forbes, 918 S.W.2d 431, 451-52 (Tenn. Crim.App.1995) (citing State v. Chance, 778 S.W.2d 457, 461-62 (Tenn.Crim.App. 1989)). In that case, as in the instant case, a supplemental instruction had been delivered to the jury without specific language warning against the placement of undue emphasis on the instruction. Id. at 452. The court found that, "while the supplemental instruction should have included an admonishment to place no undue emphasis upon it, the main charge to the jury included an instruction not to single out one instruction over any other." Id. Thus, the court found no reversible error. Id.
¶ 19. The Louisiana Court of Appeals addressed this issue in State v. Bunley, 805 So.2d 292 (La.Ct.App.2001), wherein the jury requested a re-instruction after deliberations had begun. Id. at 302. The defendant argued that the court did not issue the re-instruction with the proper prefatory language, thereby confusing the jury. Id. The court found that the question was whether it was "reasonably likely" that the jury misunderstood the challenged instruction, not simply whether the jury may have possibly misunderstood the instruction. *873 Id. (citing State v. Lennon, 661 So.2d 1047, 1049 (La.Ct.App.1995)). The court further noted that the instructions as a whole should be considered in making this determination, including any instructions given at the outset of deliberation. Id. at 303. The instruction given at the outset included language that the jury "must not single out any one of these instructions and disregard others." Id. When considered in light of the original instructions, including the foregoing instructive language, the Louisiana Court of Appeals found that the jury could not reasonably have been confused by the supplemental instruction. Id.
¶ 20. Williams also argues that the trial judge's instruction plainly said that only actual penetration is needed to establish the offense of rape. This is simply not so. The jury had been previously instructed, via instruction C-8, on all of the elements needed to establish rape. Unless the jury was following that instruction, the panel never would have known to ask for the definition of "actual penetration." The trial judge responded to the inquiry that, "as to the definition of actual penetration," rape is established by even slight penetration. When this instruction is read in light of the other instructions, it is clear that the jury was adequately informed that, in order to convict Williams of rape, the panel must determine that there was actual penetration without the consent of N.B. Therefore, we find the trial judge did not single out a particular portion of the evidence by defining "actual penetration"; the jury did that in requesting the specific definition.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF MONROE COUNTY OF CONVICTION OF RAPE AND SENTENCE OF TWENTY YEARS WITHOUT PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO REGISTER AS A SEX OFFENDER UPON RELEASE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] The defendant, Terry Williams, is not related to Patrick Williams or his brother, Tito.
[2] On appeal the State contends that Williams's objection to the supplemental instruction at trial was insufficient to preserve the issue for appeal. Counsel's objection stated that the definition of "actual penetration" was a question of fact, not law, and that, regardless of the definition, the supplemental instruction should have been given at the beginning of jury deliberations with the original instructions. We believe that the second part of this objection was sufficient to preserve the issue for appeal, and we decline to impose a procedural bar. We observe, however, that had defense counsel given a more detailed argument, similar to the argument he raises on appeal, the trial judge would have been given an opportunity to include more extensive prefatory and concluding language in the supplemental instruction.
[3] See, e.g., Wilson v. State, 606 So.2d 598, 599 (Miss.1992); Jackson v. State, 452 So.2d 438, 440 (Miss.1984); Davis v. State, 406 So.2d 795, 801 (Miss.1981).