513 So.2d 603 (1987)
Ricky STEVENS
v.
STATE of Mississippi.
No. 58005.
Supreme Court of Mississippi.
September 30, 1987.
*604 Fred L. Cooper, Columbia, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
ROY NOBLE LEE, Presiding Justice, for the Court:
Ricky Stevens was convicted of armed robbery in the Circuit Court of Marion County and sentenced to serve twenty (20) years in the custody of the Mississippi Department of Corrections. We affirm.
The facts are virtually undisputed. At approximately 4:30 p.m. on November 27, 1985, Stevens and an accomplice, Tommy Dale Holmes, drove to the Midway Grocery Store, owned by Charles Russell. While Holmes waited in the car, Stevens entered the store and asked for a pack of Marlboro cigarettes. Russell, his teen-aged daughter Jenny, and her friend Margaret Hammond were present in the store. When told that the store did not stock his particular brand of cigarettes, Stevens left.
About two hours later the two men returned to the store when Russell was alone behind the counter. Stevens entered, purchased matches and asked for a cold beer. Holmes then appeared with a rifle. While Holmes held the rifle on Russell, Stevens took the money from the cash register, and the pair fled. Later in the evening, Russell and the two girls spotted Stevens and Holmes in their car at Cox's Triangle Gulf Station and told the police that these were the two men who robbed the store.
Stevens testified that the robbery was Holmes' idea, and that he took the money from the cash drawer because "I was just like Mr. Russell, I was about scared to death."
Stevens assigns two errors. The first concerns the dismissal of a regular juror and her replacement with an alternate. After the testimony was completed but before the jury commenced its deliberations, the trial judge excused a regular juror and allowed the alternate to go forward in the deliberations. After the jury retired to the jury room, defendant moved for a mistrial:
Comes now the defendant and moves the Court to declare a mistrial because the court excused one of the primary jurors, who gave no reason whatsoever, but she didn't want to go on. We feel that this 
The Court interrupted:
All right, the Court wants to let the record be clear that the Court did view the juror, and that she was very concerned, and she did pay attention throughout the trial and seemed to be a very good juror, and that there was some problem that she  some serious problem other than just wanting to to home and not deliberating, and rather than to get into that out here in the open courtroom and all, since we did have an alternate, and that's the purpose of the alternate, and I did go ahead and accept the alternate, and the motion will be overruled.
The dismissal of a juror for good cause and her replacement with an alternate is within the sound discretion of the trial judge. Mississippi Code Annotated § 13-5-67 (1972); Russell v. State, 220 So.2d 334 (Miss. 1969). Although the trial judge here obviously talked with the juror and concluded that she was no longer able or qualified to perform her duties, the manner in which that decision was made was imperfect. If, for whatever reason, the *605 judge chose to hear the matter in chambers, counsel for both sides should have been informed and given the opportunity to be present or, at least, to object and make a record. Also, the lower court should have put in the record the specific reasons for excusing the juror. This Court now has no way to review the reasons for the dismissal and the objection to the dismissal. Counsel has cited no actual prejudice to the appellant arising out of the substitution of jurors, and we must assume that the juror was excused for good cause.
The appellant also urges that the lower court erred in denying a motion for new trial when it was revealed that a juror concealed material information on voir dire. No record was made of voir dire, and no bill of exceptions was filed, but attached to the motion for new trial was a stipulation of counsel that jurors were asked on voir dire:
Have any of your family members of a close personal friend (that you would regard like a family member) ever been the victim of a crime?
No one responded in the affirmative, although, in fact, one juror, Kenneth Carson, was a first cousin of Virgie Loretta Carson, who was shot and killed in a robbery of a Marion County store where she was employed.
In Odom v. State, 355 So.2d 1381 (Miss. 1978), we held that where a juror fails to respond to a question on voir dire, that failure does not warrant a new trial unless (1) the question was relevant and unambiguous, (2) the juror had substantial knowledge of the information sought to be elicited, and (3) prejudice resulted from the failure to respond. Again, in the state of the record, we cannot conclude that the question was unambiguous. The term "family member" may mean to one man, wife and children, to another parents and siblings, to a third anyone within the extended family.
Again, we consider the evidence in this case in light of the two errors discussed.
(1) At 4:30 p.m. on November 27, 1985, appellants and an accomplice, Tommy Dale Holmes, drove to the store of Charles Russell where appellant entered the store and asked for a pack of Marlboro cigarettes. The store owner, Russell, his daughter Jenny and her friend Margaret Hammond were in the store. Appellant left without buying anything.
(2) Tommy Dale Holmes, the accomplice, remained in the car outside the store while appellant "cased" the store.
(3) About two hours later, when Russell was alone behind the counter, appellant and Holmes returned to the store. Appellant entered, purchased matches and asked for a cold beer. Holmes then entered with a rifle.
(4) While Holmes held the rifle on Russell, appellant took the money from the cash register and the pair fled.
(5) Later in the evening, Russell and the two girls who were first with him spotted appellant and Holmes in their car at Cox's Triangle Gulf Station and identified them to the police.
(6) Appellant's sole defense was that the robbery was accomplice's Holmes idea; that appellant took the money from the cash register because "I was just like Mr. Russell, I was scared to death." The facts were overwhelming as to the guilt of appellant. No juror, in the exercise of reason and right, could have found otherwise.
Therefore, the errors committed by the lower court, if errors they were, could not have affected the outcome of the case and were harmless. The judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., and DAN M. LEE, PRATHER, ANDERSON and GRIFFIN, JJ., concur.
SULLIVAN, J., HAWKINS, P.J., and ROBERTSON, J., dissent.
SULLIVAN, Justice, dissenting:
This case presents two issues:
(1) Whether the dismissal of a juror and her replacement with an alternate should have resulted in a mistrial; and
*606 (2) Whether the trial court erred in denying a motion for a new trial when it was revealed that a juror concealed material information on voir dire.
I respectfully dissent from the majority's treatment of the second issue.
In McDonough Power Equipment v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663, 671 (1984), the United States Supreme Court on similar facts held:
That to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.
When the McDonough holding is applied to the facts in this case it is apparent that at the very least Stevens is entitled to a hearing on whether or not he should be granted a new trial. If the McDonough principles apply in a civil case where mere money is at stake, surely they apply with even greater force to this case where Stevens faces the loss of his freedom. If our ancient faith in the institution of the jury as the great protector of the rights of the individual is to have any meaning, we must insist that the jurors themselves, if nothing else, be fair and impartial. Anything less makes a travesty of our concept of a jury trial.
The majority opinion questions whether this even constituted error relying on Stevens' apparent guilt in order to justify ignoring the very purpose and protection of voir dire. The United States Supreme Court explained the necessity of truthful answers during voir dire as follows:
One touchstone of a fair trial is an impartial trier of fact  "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, [946] 71 L.Ed.2d 78 (1982). Voir dire examinations serve to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors.
McDonough Power Equipment v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663, 670 (1984).
The idea that Carson's failure to respond when asked whether any of his family members had been a victim of a crime "could not have affected the outcome of the case," as the majority suggests, is ludicrous at best. The majority rests its opinion solely on Odom v. State, 355 So.2d 1381 (Miss. 1978), and includes the Odom test for when failure to respond on voir dire constitutes grounds for a new trial but skips analysis of these facts under that test. The majority instead simply considers that any error was harmless.
I would reverse and remand this cause for a new trial.
HAWKINS, P.J., and ROBERTSON, J., join this dissent.