726 So.2d 238 (1998)
Shawnderic HORTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00370 COA.
Court of Appeals of Mississippi.
December 30, 1998.
*240 Eugene E. Perrier, R. Louis Field, Vicksburg, Attorneys for Appellant.
*241 Office of the Attorney General by DeWitt T. Allred, III, Attorneys for Appellee.
BEFORE THOMAS, P.J., DIAZ AND SOUTHWICK, JJ.
DIAZ, J., for the Court:
¶ 1. Shawnderic Horton appeals the decision of the Warren County Circuit Court convicting him of three counts of capital murder and two counts of armed robbery. Horton raises the following issues in his appeal: (1) whether the evidence presented at trial was sufficient to establish the crimes of capital murder and armed robbery and whether the jury's verdict was against the overwhelming weight of the evidence, (2) whether the circuit court erred in failing to provide him with a speedy trial and denying his motion to dismiss, (3) whether the circuit court erred in admitting the gun into evidence and whether the probative value outweighed the prejudice to the jury, and (4) whether the circuit court erred in dismissing a juror after being duly chosen and seated. Finding no error, we affirm the ruling of the circuit court.

FACTS
¶ 2. In the fall of 1994, Michael Garrison, Clifton G. Brown, and Dorian D. Martin were students at Hinds Community College in Utica. At that time, Mr. Brown owned a Mickey Mouse watch, and Mr. Martin owned a gold-nugget Seiko watch. On October 15 and 16, 1994, the Vicksburg police became aware that all three students were missing and that the three had left the Utica campus together in Mr. Martin's car on October 10, 1994. On October 17, 1994, Mr. Martin's car was found in a casino parking lot with the door ajar and the keys in the ignition. When the officers dusted the car for fingerprints, they discovered that the car had been wiped clean of prints. Consequently, no fingerprints were found anywhere in the interior of the car.
¶ 3. During the course of the investigation, Horton's name came up as a possible associate of Mr. Martin's. Horton was interviewed by the police on or about October 20, 1994. His statement was admitted into evidence at his subsequent trial. In that statement, Horton told the police that he went to Phoenix, Arizona by bus on October 9, 1994. Furthermore, he stated that he did not know anything about the disappearance of the three students. The police checked Horton's alibi and discovered that he and Dennis J. Berry purchased bus tickets at 4:30 p.m. on October 10, 1994, and departed for Phoenix around 7:00 p.m. that night. When the police confronted Horton with this information, he changed his story.
¶ 4. On October 21, 1994, Horton told the police he had some information about what happened to the three students, and then he took them to where the bodies were located. The next day, Horton gave a second statement to the police which was video taped and admitted into evidence at his trial. In this statement, Horton described the events leading up to the death of the three students. Additionally, the police were able to recover two watches which Horton was able to identify as taken from the victims.
¶ 5. In December 1994, Horton related the following story in a video taped interview. Mr. Berry came to Vicksburg from Phoenix, Arizona, prior to October 10, 1994, to attend the funeral of Dominique Givens, who was Horton's cousin who died in Arizona. Dennis J. Berry observed Horton talking with two people, one of whom was the victim Mr. Martin. Mr. Berry commented on their cars and inquired about how much money the two had and who they were. Horton stated that they carried money sometimes, and then Berry said that he was going to rob them. Berry asked Horton to obtain a gun for him which he did through several of his friends. Berry then traded a gold chain for the gun.
¶ 6. Mr. Martin, Mr. Brown, and Mr. Garrison were supposed to come to Horton's house to retrieve money that Horton owed Mr. Martin. They arrived Monday and came inside Horton's house. As Horton was about to pay Mr. Martin, Berry pulled a gun and robbed them of the two watches, some money, and other items. Berry directed Horton to tape Mr. Brown and Mr. Garrison with duct tape. Then, Berry decided the students should be taken out to the country somewhere. Horton stated that he drove Mr. Martin's car and found a secluded place in *242 the country. He further stated that Berry took the three men out of the car, pushed them into the bushes, then decided to make them enter an abandoned house where he shot and killed all three of them. The cartridge casings, cartridges, and projectiles were later found in the house. Thereafter, Horton drove Mr. Martin's car to the casino parking lot, wiped it down to remove fingerprints, and left it. Throughout his statement, Horton expressed that he tried to talk Berry out of shooting the three students.
¶ 7. Once Berry and Horton were back in Vicksburg, they bought their bus tickets, bought and consumed beer and liquor, went home and packed, and returned to bus station to wait for the bus. Horton stated that he made Berry get rid of the gun before he agreed to board the bus with him. Berry gave the gun to Mike Williams who eventually sold it to Timothy Harris. Thereafter, Berry and Horton boarded the bus and went to Arizona. Mr. Williams was later requested by the police department to retrieve the gun, which he did.
¶ 8. When Horton returned from Arizona, he had with him one of the watches and a jacket stolen during the robbery. After he found out that the police were looking for him, he deposited the jacket and watch with a neighbor for safekeeping, and then he went down to the police station. Berry was later arrested in Arizona
¶ 9. On May 3, 1995, Horton was indicted jointly with Berry in the Circuit Court of Warren County on the charges of (1) capital murder (kidnapping) of Clifton G. Brown, (2) the armed robbery of Clifton G. Brown, (3) the capital murder (kidnapping) of Dorian D. Martin, (4) the armed robbery of Dorian D. Martin, and (5) the capital murder (kidnapping) of Michael Garrison. All of these crimes were alleged to have been committed on or about October 10, 1994.
¶ 10. Horton filed a motion to dismiss for want of a speedy trial, alleging both a violation of his constitutional right to a speedy trial and a violation of Miss.Code Ann. § 99-17-1. Horton was arrested on October 21 or 22, 1994. He was indicted on May 3, 1995, and he was arraigned on May 5, 1995. Horton's first attorney represented him from April 25, 1995 until June 13, 1995 when he withdrew because of a conflict of interest. The initial setting for the joint trial of Horton and Berry was July 17, 1995; however, a continuance was granted on a motion by Berry. Instead, another murder case was tried during that week. The trial court found that both the attorney's withdrawal and the other murder trial constituted good cause for the delay. Thereafter, Berry's attorney withdrew on October 25, 1995, and a continuance was granted on a motion by Berry on that date.
¶ 11. Severance of the defendants was granted on March 13, 1996, and the trial court found that the motion was made by both defendants. On April 12, 1996 the State filed a motion for a special setting of this case for trial outside of term, and by agreement on April 22, 1996, the circuit court set the case for trial on September 30, 1996.
¶ 12. On August 20, 1996, the circuit court on an ore tenus motion of both parties continued the date for filing pre-trial motions in the case from August 19, 1996 to September 6, 1996. On September 6, 1996, the defense filed a motion for continuance from the September 30th trial date until November of December of 1996, on the basis of unpreparedness for trial and a scheduling conflict stemming from the parties' engagement in plea negotiations. On September 9, 1996, the circuit court granted this motion and continued the case to February 3, 1997, by agreement.
¶ 13. On September 30, 1996, the defense filed a motion to dismiss for want of a speedy trial. The circuit court considered this motion at a pre-trial hearing on December 20, 1996, and it was agreed that the motion would be considered at a subsequent pre-trial hearing on January 30, 1997. The State announced at this pre-trial hearing that it would not seek the death penalty on the capital murder charges. Thereafter, the circuit court conducted a hearing on the motion to dismiss and denied the motion on both statutory and constitutional grounds. The trial began on February 4, 1997.
¶ 14. On February 7, 1997, the jury found Horton guilty of all five counts although the *243 jury was unable to agree on life sentences for the armed robberies. On February 21, 1997, the trial judge sentenced Horton to three terms of life imprisonment for the capital murders, twenty years imprisonment with ten years to serve and ten years suspended with five years of supervised probation for one armed robbery, and eighteen years imprisonment with eight years to serve and ten years suspended with five years of supervised probation for the second armed robbery. Feeling aggrieved, Horton now perfects this appeal.

DISCUSSION

I. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO ESTABLISH THE CRIMES OF CAPITAL MURDER AND ARMED ROBBERY AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE

A. Sufficiency of the Evidence
¶ 15. A challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion for a directed verdict and JNOV. Id. If he concludes that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id. This Court's scope of review is limited to the same examination as that of the trial court in reviewing the motions for directed verdict and JNOV; that is, if the facts point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State, then it must sustain the assignment of error. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989). Of course, the opposite is also true. We may reverse the trial court's ruling only where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. 1993).
¶ 16. In the case sub judice, legally sufficient evidence existed to find Horton guilty beyond a reasonable doubt. The State made out is prima facie case by showing that Horton knowingly helped Berry procure a gun to commit the crimes, that he taped the victims' hands and mouths, that he participated in putting the victims in the car, that he found and drove to the secluded place in the country, that he wiped down the car for fingerprints, and that he used the stolen money to buy beer, liquor, and bus tickets to leave the state. Furthermore, several police officers testified who examined the crime scene and questioned Horton. Finally, the State submitted as evidence Horton's video taped statement of his knowledge of the crimes. Since the State put forth sufficient, credible evidence, the trial judge was required to leave the final decision of guilt or innocence to the jury. We affirm the trial judge's ruling with regard to the motion for a directed verdict.

B. Weight of the Evidence
¶ 17. The next motion we will review is that for a new trial. This goes to the weight of the evidence and not its sufficiency. In reviewing this claim, this Court must examine the trial judge's denial of Horton's motion for a new trial. Jones v. State, 635 So.2d 884, 887 (Miss.1994). The decision of whether or not to grant a motion for a new trial rests in the sound discretion of the trial judge and should only be granted when the judge is certain that the verdict is so contrary to the overwhelming weight of the evidence that failure to grant the motion would result in an unconscionable injustice. May, 460 So.2d at 781. In making the determination of whether a verdict is against the overwhelming weight of the evidence, this Court must view all evidence in the light most consistent with the jury verdict, and we should not overturn the verdict unless we find that the lower court abused its discretion when it denied the motion. Veal v. State, 585 So.2d 693, 695 (Miss.1991). The proper function of the jury is to decide the *244 outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Id. Likewise, the reviewing court may not reverse unless it finds there was an abuse of discretion by the lower court in denying the defendant's motion for a new trial. Id. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Horton's motion for a new trial. Accordingly, we dismiss this assignment of error as lacking in merit.

II. WHETHER THE CIRCUIT COURT ERRED IN FAILING TO PROVIDE HORTON WITH A SPEEDY TRIAL AND THE DENIAL OF HIS MOTION TO DISMISS
¶ 18. The Mississippi Code Annotated § 99-17-1 provides the statutory right to a speedy trial:
Indictments to be tried within 270 days of arraignment.
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two-hundred seventy (270) days after the accused has been arraigned.
Miss.Code Ann. 99-17-1 (Rev.1994). Furthermore, the Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."
¶ 19. This Court analyzes a claim of a violation of the constitutional right to a speedy trial under the balancing test announced in Barker v. Wingo, 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four Barker factors are (1) the length of delay, (2) the reasons for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defense. Herring v. State, 691 So.2d 948, 955 (Miss.1997)(citing Barker, 407 U.S. at 529, 92 S.Ct. 2182). The Barker analysis turns on the facts of the particular case with no sole factor being dispositive. Taylor v. State, 672 So.2d 1246, 1258 (Miss. 1996).
¶ 20. The time period in question for purposes of constitutional analysis is that between initiation of prosecution and commencement of trial. Beavers v. State, 498 So.2d 788, 789-90 (Miss.1986), overruled on other grounds by State v. Ferguson, 576 So.2d 1252, 1255 (Miss.1991). A delay in excess of eight months between arrest and trial establishes "presumptive prejudice" sufficient to trigger analysis under Barker. Skaggs v. State, 676 So.2d 897, 900 (Miss. 1996).
¶ 21. The familiar Barker factors in the analysis of a speedy trial as applied to the case sub judice are as follows.

1. Length of Delay
¶ 22. The delay in the present case is a total of approximately twenty-eight months. Under Skaggs, this twenty-eight month delay is presumptively prejudicial. In Flores v. State, 574 So.2d 1314, 1322 (Miss.1990), the Mississippi Supreme Court held that if an extensive delay exists prior to trial, then that delay "must be weighed heavily in favor of [the defendant] in the balancing test." Id. However, the delay should "not [be] conclusively weighted against the State," because the presumption of a prejudicial delay may be rebutted when balanced by the remaining factors. Herring, 691 So.2d at 955 (citing Wiley v. State, 582 So.2d 1008, 1012 (Miss. 1991)). Here, this factor weighs in favor of Horton.

2. Reasons for the Delay
¶ 23. The Mississippi Supreme Court has held that once the delay is found to be presumptively prejudicial, "the burden shifts to the prosecutor to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of the reasons." State v. Ferguson, 576 So.2d 1252, 1254 (Miss.1991). The State has shown and the lower court found that the overwhelming majority of the delay in this case was caused by Horton and his co-defendant Berry. After thirteen months as co-indictees, Horton made a motion for severance. Until then, the case was delayed because of two continuances proposed by Berry, the withdrawal of attorneys for Berry, and bumped because of a congested docket. Taylor v. State, 672 So.2d 1246, 1259 (Miss.1996)(holding that change of defense attorneys is beyond control of State *245 and therefore any resulting delay is charged against defendant); see also Herring, 691 So.2d at 953 (holding that congested dockets is good reason for delay). Therefore, this factor weighs in favor of the State.

3. Defendant's Assertion of His Right
¶ 24. The Barker court held that in this third factor:
The defendant's assertion of his speedy trial right, then is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.
Barker, 407 U.S. at 531-32, 92 S.Ct. 2182. Horton did not assert his right to a speedy trial until he filed his motion to dismiss in September of 1996, almost two years after arrest. Under these circumstances, the assertion of right factor weighs, at most, only slightly in his favor. McGhee v. State, 657 So.2d 799, 803-04 (Miss.1995).

4. Prejudice to the Defendant
¶ 25. In a delay as long as the one in the case sub judice, the burden again shifts to the State to show that the defense suffered no prejudice by the delay. The United States Supreme Court noted:
Inordinate delay ... seriously interfere with the defendant's liberty, whether he is free on bail or not and ... that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family, and friends.
United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Although Horton alleged that he had lost potential witnesses as a result of the delay, he offered no proof to support this allegation. Additionally, Horton alleged that he was prejudiced by being in jail; however, the trial court found that there was no showing of prejudice "other than general allegations of incarceration" and that there was no showing of loss of witnesses or evidence. Undoubtedly, while there is some anxiety and concern with Horton's incarceration, there is no other prejudice of which he complains. Thus, "this factor has little weight in favor of the defense." Hull v. State, 687 So.2d 708, 730 (Miss.1996). The method of computation under the 270-day statute is set out in Adams v. State, 583 So.2d 165, 167 (Miss.1991). The date of arraignment is not counted but the date of trial is and weekends are counted unless the 270th day is a Sunday. Furthermore, if good cause is shown for granting a continuance, that time does not count. Reed v. State, 506 So.2d 277, 281 (Miss.1987).
¶ 26. The delay between Horton's arrest in October 1994 and his presentation to the grand jury in May 1995 was due in large part to the co-defendant's absence from Mississippi coupled with logistical problems associated with obtaining witnesses from other states and working with other law enforcement agencies. At the very least, this was not a "deliberate attempt to delay the trial in order to hamper the defense." Taylor, 672 So.2d at 1260. Furthermore, the time prior to arraignment is not counted for purposes of the speedy-trial statute. Nations v. State, 481 So.2d 760, 761 (Miss.1985).
¶ 27. In the case at hand, the total number of days between the arraignment and the trial was 641. From this total, the following time-periods can be deducted:
¶ 28. The 73 day delay between Horton's arraignment in May 1995 and the initial trial setting on July 17 is excused as the case was set for the next reasonably available term of court as stated in Ross v. State, 605 So.2d 17, 22 (Miss.1992). Therefore, that delay is not assessed against the State.
¶ 29. Horton's case was granted a continuance in July on a motion by his co-defendant. Any resulting delay in this instance should not be charged to the State. Furthermore, another murder case was higher on the docket and tried that week. Therefore, this 42 day delay is not weighed against the State. Additionally, the withdrawal of Horton's attorney a month before the trial date was another cause for the delay. Taylor, 672 So.2d at 1259 ("Delays associated with the switching of defense counsel are beyond the control of the State, and therefore should be charged to the defendant.").
*246 ¶ 30. The 7 day delay between the beginning of the August term and the September term should not be weighed heavily against the State since the trial of another case "bumped" the defendant's trial date.
¶ 31. The 75 day delay between October 1995 and January 1996 began with the withdrawal of the co-defendant's attorney whereupon a motion for continuance was granted to the defendants. Generally, a continuance granted to one co-defendant does not apply to the other unless attorneys for both sides helped obtain the continuance. Flores v. State, 574 So.2d 1314, 1318-21 (Miss.1990). However, in this case, the continuance was granted to Berry because of his attorney's withdrawal, and that is good cause for granting a continuance. Taylor, 672 So.2d at 1259. The trial court could not have forced Berry to trial at that term of court with new and presumably unprepared counsel without compromising Berry's constitutional right to effective assistance of counsel.
¶ 32. While Horton and Berry were facing a joint trial, and neither of them had moved for a severance, a continuance of Berry's trial necessarily meant a continuance of Horton's trial as well. Horton is not blamed for this delay, but the operative question for purposes of a speedy-trial analysis is not whether the defendant can be "blamed" but whether the delay can be charged against the State, since the State is the only party against whom the "speedy-trial clock" can "tick." Therefore, if a continuance is granted to a co-defendant for good cause, then it operates as a good cause delay as to a jointly charged defendant.
¶ 33. The order granting Berry's motion for continuance is not part of this record nor does the record reflect the date to which the case was continued. Since the new attorney was not appointed until October 31, 1995, it is unlikely that he would have been prepared to try a triple homicide capital murder case in the next court term from November 20 to December 9, 1995. Therefore, the 75 day delay caused by the motion for continuance spanned from October 1995 until the January 1996 term of court, and it was for good cause.
¶ 34. Although the trial court did not specifically make findings of fact with respect to the reasons for delay from January 1996 until April 1996, this Court presumes that the circuit court resolved factual issues in favor of the State. Dynasteel v. Aztec Industries, 611 So.2d 977, 981 (Miss. 1992) (where trial court makes no specific findings, Supreme Court presumes that trial court resolved issues in favor of appellees); Riddle v. State, 580 So.2d 1195, 1200 (Miss. 1991) ("Where findings of fact are fairly implicit in a trial court's ruling, we will credit those and give them deference."). However, at the hearing on the delay, the State offered reasons such as a crowded docket, the trial judge's engagements in other trials of other cases, a shortage of prosecutorial staff, and the need to block out a two-week time period for the trial of this case which at that time was a death-penalty case. Delays due to crowded dockets are not weighed heavily against the State. Skaggs, 676 So.2d at 900. In fact, crowded dockets, judicial engagements, and a shortage of prosecutorial staff are neutral reasons for delay under McGhee.
¶ 35. The 161 day delay between April 1996 and September 1996 was for good cause. The State filed a motion for a special setting, and the court set the case for trial on September 30, 1996. Since this setting was agreed to by the defense, it was in effect, an agreed continuance. A defendant cannot complain of a delay attributable to a continuance by agreement. Giles v. State, 650 So.2d 846, 851 (Miss.1995).
¶ 36. The 125 day delay between September 1996 and February 1997 occurred because the defense filed a motion for continuance which was agreed to and set for the February 1997 term. As previously stated under Giles, a defendant cannot complain of a delay attributable to a continuance by agreement.
¶ 37. The number of days to be deducted amounts to 483 days. Subtracted from 641, this leaves a total of 158 days which is well within the 270-day statutory allotment.
¶ 38. Overall, the State offered valid reasons for all of the delays from Horton's arrest in October of 1994 until his trial in February of 1997. Most of the delays were *247 either for neutral reasons or at the request of the defense. Additionally, Horton did not show any actual trial prejudice and relied entirely on the "presumed" prejudice resulting from pre-trial incarceration. Furthermore, Horton did not make a demand for a speedy trial until September of 1996 when he filed his motion to dismiss. This motion was made after he agreed to continuances, moved for his own continuance, and moved for a severance from his co-defendant. After balancing the Barker factors and assessing the delays, we find that Horton's rights to a speedy trial were not violated. Therefore, this second assignment of error is without merit.

III. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING THE GUN INTO EVIDENCE AND WHETHER THE PROBATIVE VALUE OUTWEIGHED THE PREJUDICE TO THE JURY
¶ 39. The Mississippi Supreme Court has held that the test to determine if "there has been a break in the chain of custody of evidence is whether there is an indication of probable tampering." Nalls v. State, 651 So.2d 1074, 1077 (Miss.1995). Matters regarding the chain of custody of evidence are largely left to the discretion of the trial judge and will not be disturbed absent a showing of abuse of discretion. Id. During the discovery process two handguns were produced that could have been the murder weapon; however, at trial the crime lab technician positively identified the only handgun introduced at the trial as the one that fired the projectiles found at the scene of the murders. Furthermore, Mr. Williams testified that this handgun appeared to be the one he retrieved and gave to Sheriff Barrett. Additionally, the trial court satisfied itself that there was no likelihood that the two handguns were mixed up at any point. Based upon these facts, we find that the gun in this case has an unbroken chain of custody and is therefore admissible. ¶ 40. Horton also argues that the prejudicial value of entering the gun into evidence outweighed its probative value. However, Horton cites no legal authority in support of this assignment of error. The supreme court has repeatedly stated that it is the appellant's duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss. 1997). Accordingly, Horton's failure to cite authority for this issue preludes appellate review.

IV. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING A JUROR AFTER BEING DULY CHOSEN AND SEATED
¶ 41. Trial courts in Mississippi do not have "license to remove jurors and replace them with alternates, willy nilly." Myers v. State, 565 So.2d 554, 557 (Miss. 1990). Section 13-5-67 of the Mississippi Code Annotated (1972) and Myers provide for the replacement with alternates of "jurors who, prior to the time the jury retires to consider the verdict, become unable or disqualified to perform their duties." Myers, 565 So.2d at 557. "The dismissal of a juror for good cause and her replacement with an alternate is within the sound discretion of the trial judge." Stevens v. State, 513 So.2d 603, 604 (Miss.1987). Here, the replacement of a juror with the alternate occurred before the jury had retired to deliberate. The replaced juror was questioned in the trial judge's chambers in the presence of both the prosecutor and defense counsel. After opening arguments and most of the State's case-in-chief, the excused juror told the judge and the attorneys that as a teacher he taught some of the potential witnesses in the case. Furthermore, he had problems with some of the former students in the classroom, and that those dealings made him feel uncomfortable and concerned for his safety if he continued to serve on the jury. He stated that several of the people involved with the case would recognize if they saw him on the jury panel. Additionally, the juror stated that he had some preconceived notions about the potential witnesses. After questioning the juror, the trial judge stated his reasons for dismissing the juror into the record indicating that he had reason to believe that the juror's presence during deliberations would prejudice Horton's right to a fair and impartial jury. Furthermore, Horton has not shown any prejudice resulting from the court's action nor has he shown that the alternate was not a qualified and fair juror. *248 Although Horton has the right to be tried by a fair and impartial jury, he does not have a vested right to any particular juror. Johnson v. State, 631 So.2d 185, 191 (Miss.1994). Therefore, we find this final assignment of error to be without merit.
¶ 42. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF THREE COUNTS OF CAPITAL MURDER AND SENTENCE TO A TERM OF LIFE FOR EACH COUNT AND CONVICTION OF ARMED ROBBERY WITH A SENTENCE OF TWENTY YEARS WITH TEN YEARS SUSPENDED PROBATION AND CONVICTION OF ARMED ROBBERY WITH A SENTENCE OF EIGHTEEN YEARS WITH TEN YEARS SUSPENDED ON PROBATION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES TO RUN CONSECUTIVELY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO WARREN COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.