THOMAS, J.,
for the Court:
¶ 1. Travone Robinson appeals his convictions for conspiracy and robbery raising the following issues as error:
I. WHETHER THE STATE’S EVIDENCE WAS SUFFICIENT TO CONVICT ROBINSON OF CONSPIRACY AND ROBBERY?
II. WHETHER THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-3 OVER THE OBJECTION OF THE APPELLANT?
Finding no error, we affirm.
FACTS
¶2. On January 3, 1998, seventy-six-year-old Rosalea Sherman had just gotten *100 off work from a local restaurant in Green-ville, Mississippi. Sherman arrived at her home between 8:00 and 9:00 p.m. As Sherman was parking her car in her driveway, she noticed a light-colored car that was driving “very slow” across the street from her. After Sherman got out of her car to approach her house, the light-colored car came across on the wrong side of the street and stopped suddenly. At that precise moment an individual, later identified as Jaquinn L. Kitchen, jumped from the car wearing dark clothes and a bandana over his face. Kitchen ran toward Sherman and demanded that she give him her purse. Sherman told Kitchen that she did not have a purse, and Kitchen snatched a long gold chain from Sherman’s neck. Kitchen, with the gold necklace in hand, fled toward the waiting car. At this point Sherman started screaming and ran after Kitchen. Sherman directed her pleas for help to a nearby vehicle and got the driver’s attention.
¶ 3. Mr. Joseph Adams, the driver of the approaching car, testified to seeing Sherman running out pointing and to seeing a man running away from her. This man jumped into the passenger side of the parked light-colored car. Adams pursued the car as well as contacting the police on his telephone. The fleeing car failed to make a turn, due to excessive speeds, and crashed into a ditch. Adams saw the passenger get out of the car, walk around the car, and then run off. The driver, later identified as Travone Robinson, stayed in the car and was arrested when the police officers arrived. Adams testified later that Robinson’s car drove in excess of a hundred miles and hour, and that he never lost sight of Robinson’s car.
¶4. Ms. Amanda Nichols, another witness, was in a car with her boyfriend when she noticed Sherman, who was yelling and waving and pointing at the two men in the light-colored car. Nichols and her boyfriend followed the car until it lost control and wrecked. Nichols later testified that both men in the car were dressed in black.
¶ 5. The appellant Robinson and the passenger Kitchen were arrested by Green-ville Police Officers and charged with robbery and conspiracy to commit robbery. Lieutenant Danny Súber of the Greenville Police Department testified that he advised Robinson of his Miranda rights, and that after Robinson signed a Miranda waiver form, he made a statement which was recorded by Súber. In his statement, Robinson stated that Kitchen told him to stop the car, and that he knew what Kitchen was going to do. He stated: “Jay was going to rob the lady.” Robinson also stated that “it wasn’t like we plotted the story.” Robinson admitted to having knowledge of the fact that the car tag was flipped down so that the tag could not be read, but stated that he did not know who flipped the tag down. Robinson went on to confess that he did not attempt to stop Kitchens until he noticed a car approaching in the rearview mirror.
¶ 6. Robinson was indicted for conspiracy and robbery. After deliberations, the jury returned a verdict of guilty. Robinson filed and presented his motion for a new trial which was denied by the trial court. It is from this denial that Robinson now appeals.
ANALYSIS
I.
WHETHER THE STATE’S EVIDENCE WAS SUFFICIENT TO CONVICT ROBINSON OF CONSPIRACY AND ROBBERY?
¶ 7. Robinson argues that the State’s evidence was insufficient to support *101 his convictions for conspiracy and robbery. Such a challenge to the State’s proof raises the issue of the sufficiency of the evidence of guilt. The trial court, in considering the issue, is charged to view all of the evidence before the court in the light most favorable to the prosecution. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Only if it reasonably appears to the trial court that, because of the lack of probative evidence on one or more of the necessary elements of the crime charged, a reasonable and fair-minded juror could only find the defendant not guilty should the trial court intercede. Horton v. State, 726 So.2d 238 (¶ 15) (Miss.Ct.App.1998). On those occasions that the trial court declines to intercede and the defendant subsequently appeals that decision, an appellate court is obligated to review the evidence in that same light and may overturn the trial court’s decision only if the appellate court is convinced that the trial court was manifestly incorrect. Id. Furthermore, our Mississippi Supreme Court has held that if on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury’s verdict is quite limited. Naylor v. State, 730 So.2d 561 (¶ 25) (Miss.1999).
¶8. We proceed by considering all of the evidence — not just that supporting the case for the prosecution — in the light most consistent with the verdict. Id. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. Id. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. Id. We hold that the evidence was more than sufficient to support the verdict.
¶ 9. In Robinson’s sworn statement, he admitted to driving Kitchen and knowing that Kitchen was going to rob Sherman. Robinson’s statement is sufficient evidence to prove that there was a common design or understood purpose between Kitchen and Robinson to commit the crime of robbery. Robinson states that he only tried to stop Kitchen once he realized another car was approaching. Robinson admitted to driving Kitchen to Sherman’s house and then waited for Kitchen to get back to the car before driving off. Robinson drove at a rapid rate of speed and stated that he was trying to outrun the car following them. Robinson’s sworn statement along with several witnesses who identified Robinson as the driver of the car is more than sufficient evidence to sustain Robinson’s convictions.
II.
WHETHER THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-3 OVER THE OBJECTION OF THE APPELLANT?
¶ 10. Robinson contends that the trial court erred in granting an amended jury instruction S-3. This instruction was for aiding and assisting a principal in committing a crime. The S-3 instruction read as follows:
The Court instructs the Jury that each person present at the time of, consenting to and encouraging, aiding or assisting in any manner in the commission of a crime, and knowingly, wilfully and feloniously doing any act which is an element of the crime or immediately *102 connected with it, or leading to its commission, is as much a principal as if he had with his own hands committed the whole offense.
If you believe from the evidence in this case beyond a reasonable doubt that the Defendant, Travone D. Robinson, consented to or encouraged, aided or assisted, in any manner in the commission of the crimes for which he is charged, then it is your sworn duty to find the Defendant, Travone D. Robinson guilty of robbery as charged in Count II of the indictment.
(emphasis added). Robinson’s main argument is based on the fact that a similar instruction given in the case of Lester v. State, 744 So.2d 757 (¶ 7) (Miss.1999), resulted in reversal and remand for Stanley Lester’s conviction. Robinson only states that the circumstances of his case are analogous to Lester which requires that this case be likewise reversed and remanded. However, we find that the case sub judice differs quite substantially from Lester. In Lester, the instruction in question allows a jury to convict based upon a finding that he, Lester, did any act which was an element of the crime without requiring that the jury also find that Lester was “present at the time, and consenting to and encouraging the commission of the crime.” Id. at (¶ 9). This is not the case in this instance. In this case the jury was given proper instructions on the elements of the crime, on the State’s burden of proof, and on the requirement to prove every element of the crime beyond a reasonable doubt. Therefore, we hold this assignment of error lacks merit.
¶11. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I CONSPIRACY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND COUNT II ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONSECUTIVE TO TIME ON COUNT I IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ„ concur.