820 So.2d 25 (2002)
Leon McCOY a/k/a Coy, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00337-COA.
Court of Appeals of Mississippi.
January 22, 2002.
Rehearing Denied April 9, 2002.
Certiorari Denied June 27, 2002.
*27 Edward J. Bogen, Jr., Oxford, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., For The Court.
¶ 1. Leon McCoy appeals from a jury verdict in the Circuit Court of Bolivar County, Mississippi, finding him guilty on two counts of the sale of cocaine. McCoy was sentenced to serve sixty years on each count, concurrently, without the possibility of parole. Aggrieved, McCoy perfected this appeal, raising the following issues as error:
I. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE INDICTMENT TO BE AMENDMENT AS TO COUNT I.
II. WHETHER THE TRIAL COURT ERRED BY DISMISSING ONE OF THE JURORS IN FAVOR OF AN ALTERNATE JUROR.
III. WHETHER THE TRIAL COURT ERRED BY ALLOWING EVIDENCE AS TO THE LEVEL AND DEGREE OF THE ALLEGED DRUG SALE.
IV. WHETHER THE SENTENCE WAS GROSSLY DISPROPORTIONATE TO THE CRIMES.
Finding no error, we affirm.

FACTS
¶ 2. On April 8, 1996, agents from the Mississippi Bureau of Narcotics (MBN) conducted a controlled undercover buy in Bolivar County, Mississippi. One agent, Jeff Overstreet, remained in a vehicle equipped with radio and surveillance instruments. Agent Jeff Mitchell, along with Rodney Graham, a confidential informant, went to Nell's Barber Shop and asked the owner, Vincent Richardson, if he knew where they could purchase some drugs. Richardson left the barbershop and shortly after returned with Leon McCoy.
*28 ¶ 3. Graham and McCoy began conversing and proceeded to the middle of the barbershop where Graham and Agent Mitchell could get a good look at the drugs. McCoy took out four plastic bags containing crack cocaine and placed them on the counter. Each plastic bag contained $100 worth of crack cocaine. Graham agreed to purchase $300 worth of the cocaine. After Graham paid for the drugs, Agent Mitchell asked McCoy if he could obtain an additional $300 worth of cocaine. McCoy answered affirmatively and left the barbershop for about twenty-five minutes. McCoy returned with six bags of crack cocaine. Agent Mitchell selected the three bags he wanted, put them in his pocket, and paid McCoy $300.
¶ 4. McCoy was charged with two counts of selling a controlled substance pursuant to section 41-29-139 of the Mississippi Code. During the trial, Agent Mitchell identified McCoy as the person who sold the crack cocaine. Furthermore, the sale was recorded by a tape recorder worn by Graham and a body transmitter worn by Agent Mitchell. This tape was played for the jury during the trial.
¶ 5. McCoy testified on his own behalf and denied selling cocaine to either Agent Mitchell or Graham, stating that he had been in Florida during the time of the alleged sale. In support of this defense, McCoy offered an identification badge from his job at a public warehouse in Florida and a Florida driver's license. Following the trial, McCoy was convicted on both counts and sentenced as a habitual offender under section 99-19-81 of the Mississippi Code. Moreover, the trial judge doubled each sentence pursuant to section 41-29-147 of the Mississippi Code. It is from this sentence that McCoy appeals.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR BY ALLOWING THE INDICTMENT TO BE AMENDMENT AS TO COUNT I?
¶ 6. McCoy asserts in his first assignment of error that the circuit court erred by allowing the State to improperly amend count I of the indictment. Specifically, McCoy contends that count I of the original indictment charged that the defendant sold cocaine to a person identified as "Tommy Phipps." However, subsequent to the grand jury issuing the indictment, the district attorney sought to have the indictment amended to charge McCoy with having sold cocaine to a person identified as "Rodney Graham." According to McCoy, this amendment was one of substance and not of form.
¶ 7. As a general rule, where an amendment is made to an indictment that changes the nature of the charge, then the amendment must be made by the grand jury that returned the indictment. Greenlee v. State, 725 So.2d 816, 821 (¶ 10) (Miss. 1998). However, a court may authorize an amendment to an indictment in situations where the amendment would alter the form, but not the substance of the indictment. Harris v. State, 757 So.2d 195, 199 (¶ 6) (Miss.2000); Greenlee, 725 So.2d at 821 (¶ 10); Parchman v. State, 279 So.2d 602, 604 (Miss.1973); Byrd v. State, 228 So.2d 874, 875-76 (Miss.1969). Therefore, a court may order an amendment where the amendment "does not 1) materially alter the essential facts of the offense or 2) materially alter a defense that the defendant had under the original indictment so as to prejudice his case." Harris, 757 So.2d at 199 (¶ 16). An amendment is prejudicial only where a valid defense under the original indictment would no longer be available subsequent to the amendment. Id.
¶ 8. As the record shows, both Tommy Phipps and Rodney Graham were working *29 as undercover informants for the MBN during the time of the drug sales. Prior to the beginning of the trial, the State admitted that it had misnamed one of the undercover purchasers in the indictment and sought to have the indictment amended. The State also acknowledged that it notified McCoy as soon as the mistake was discovered, several months before the trial. The trial court determined that the amendment was one of form as the exact name of the undercover informant was not essential to the underlying sale. We agree with the trial court and find that the name of the undercover informant was irrelevant to the charges against McCoy. In reaching this decision, we emphasize that neither Tommy Phipps nor Rodney Graham testified at any point in the proceedings.
¶ 9. This Court also agrees with the State's contention that the amendment to the indictment failed to deprive McCoy of any defense that existed prior to the indictment. Throughout the course of the trial, McCoy asserted only one defense to the charges against him; that is, he claimed that he could not have sold the drugs as he resided in Florida during the time of the alleged sale. Clearly, this defense does not hinge upon the identity of the undercover informant. There is no doubt that prior to the indictment McCoy would have made the same argument, and to the same effect, regardless of whose name was mentioned in the indictment. Therefore, we find that McCoy was not prejudiced by the amendment as the amendment in no way materially altered a defense available to McCoy under the original indictment.

II. DID THE TRIAL COURT ERR BY DISMISSING ONE OF THE JURORS IN FAVOR OF AN ALTERNATE JUROR?
¶ 10. McCoy next argues that the circuit court erred when, after the defense rested its case but prior to deliberations, it dismissed a juror and substituted him with an alternate. Conversely, the State argues that the dismissal and replacement of a juror with an alternate is within the trial court's discretion and there is an abundance of evidence in the record to support the court's ultimate decision to excuse the juror. We find that the trial court did not abuse its discretion.
¶ 11. The replacement of regular jurors with alternates is governed by section 13-5-67 of the Mississippi Code which states that "[a]lternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties." Miss.Code Ann. § 13-5-67 (Supp.2001). The decision to dismiss a juror for good cause and the subsequent replacement with an alternate is completely within the trial court's discretion. Stevens v. State, 513 So.2d 603, 604 (Miss.1987). See also Myers v. State, 565 So.2d 554, 557 (Miss. 1990) (noting that "good cause" is merely a euphemism for "disqualified"); Horton v. State, 726 So.2d 238, 247 (¶ 41) (Miss.Ct. App.1998). The Mississippi Supreme Court, however, has made it clear that the trial courts do not have the authority to remove and replace jurors arbitrarily. Myers, 565 So.2d at 557. The court has even suggested that the trial court should articulate into the record the exact reasons for excusing a juror. Stevens, 513 So.2d at 605. Nonetheless, the court in Stevens upheld the trial court's decision to exclude and replace the juror even where its specific reasons for dismissal were not included in the record. Id. The court reasoned that even though the trial court did not follow the proper procedure for excusing and replacing a juror, the aggrieved party was not entitled to reversal because he could not prove that the trial court's decision *30 resulted in any prejudice. Id. See also Vaughn v. State, 712 So.2d 721, 724 (¶ 15) (1998) (holding that "[a]bsent a showing of prejudice, we will not find that a trial court abused its discretion in replacing a juror with an alternate"); Shaw v. State, 540 So.2d 26, 28 (Miss.1989); Horton, 726 So.2d at 247 (¶ 41).
¶ 12. As the record shows, the trial judge was concerned by the interruptions and constant talking by Juror No. 11; however, he disregarded his suspicions until both the prosecutor and the court reporter complained of the disruptions. Upon these complaints, the judge called both parties into his chambers and held a conference regarding Juror No. 11's conduct. During this conference, the trial judge questioned the court reporter and two bailiffs as to the juror's conduct. The court reporter, although unable to state with precision the content of the juror's interruptions, did note that the juror was being very disruptive. Likewise, Ms. Wilson, one of the bailiffs, stated that she witnessed Juror No. 11 talking with another juror throughout the course of the trial. The judge concluded, stating:
The court wishes to say that not only today, but on yesterday as well, I heard comments from the jury box, and I would look up to see. And I, too, observed this juror, number 11. I dismissed it until this morning. And I still did not take any action until after the prosecuting attorney, Glenn Rossi, spoke of his observations. Then inquiry was made here in chambers of the bailiff, Ms. Sarah Wilson. This tends to suggest bias, predisposition and that kind of thing. And as a result of that, the Court hereby replaces the 11th juror with our first alternate juror.
Given that four people in the courtroom all witnessed Juror No. 11 being disruptive and talking to another juror throughout the trial, we find that the trial judge did not abuse his discretion by replacing her with an alternate prior to deliberation.
¶ 13. We must also note that McCoy made no attempt to prove that the replacement of Juror No. 11 with an alternate in any way caused him prejudice. As our case law makes clear, McCoy had the burden of proving that the dismissal of Juror No. 11 and subsequent replacement with an alternate resulted in some form of prejudice. Even when viewing McCoy's argument in the best light, this Court cannot find a demonstration of prejudice other than McCoy's assumption that this juror would have been good for his defense; an assumption that has been rejected as a basis for prejudice. See Horton, 726 So.2d at 247 (¶ 41) (noting that although one has a right to a fair and impartial jury, one does not have "a vested right to any particular juror"). Therefore, even if the trial judge had abused his discretion in replacing Juror No. 11 with an alternate, McCoy's argument would fail as he made no attempt to show that the judge's decision resulted in prejudice.

III. DID THE TRIAL COURT ERR BY ALLOWING EVIDENCE AS TO THE LEVEL AND DEGREE OF THE ALLEGED DRUG SALE?
¶ 14. McCoy next argues that the trial court erred by permitting Agent Jeff Mitchell, a witness for the State, to testify as to the degree or level of the drug sale, thus causing the jury to become inflamed and show prejudice towards the defense. The testimony of Agent Mitchell is as follows:
Q: Okay. And if you would, take a moment to explain to the ladies and gentlemen of the jury, with the quantities involved, the difference between a user and a dealer with the amounts that we're talking about.

*31 A: A user usually purchases anywhere between 20 to a hundred dollars worth of crack for his personal use or someone else's. A dealer, they purchase larger amounts, because they want to make money off selling the dope. So usually, a dealer usually purchases anywhere from a quarter to a half and on up.
Q: Okay. Define a "quarter" and "a half."
A: A quarter is anywhere from $250 to $300.
Q: Okay. And, in fact, you were purchasing $300 worth?
A: That's correct.
Q: And Mr. Graham purchased $300 worth?
A: That's correct.
Q: Which would put you in the category of a dealer?
A: Yes sir.
¶ 15. Before evidence is admitted at trial, it must first be relevant. Stromas v. State, 618 So.2d 116, 118 (Miss. 1993) (citing M.R.E. 401). The admissibility and relevancy of the evidence are within the discretion of the trial court and, absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. Reynolds v. State, 784 So.2d 929, 932 (¶ 7) (Miss.2001). As long as the trial court remains within the confines of the Mississippi Rules of Evidence, its decision to admit or exclude evidence will be accorded a high degree of deference. Johnston v. State, 567 So.2d 237, 238 (Miss.1990). Additionally, "the admission or exclusion of evidence must result in prejudice or harm, if a cause is to be reversed on that account." Jackson v. State, 594 So.2d 20, 25 (Miss.1992).
¶ 16. In the case at bar, McCoy attempts to argue prejudice based upon the irrelevant testimony showing that the quantity of the two sales indicated that the purchasers were most likely dealers themselves. To the extent that this testimonial evidence was irrelevant to the prosecutions theory of the case, we agree with McCoy. However, contrary to McCoy's assertions, we do not find that the admission of this evidence constitutes reversible error. A close look at the record reveals that McCoy, during his opening statement, indicated that at least one of the purchasers, Rodney Graham, was an actual drug dealer. As a result of this statement, the jury was on notice as to the particular nature of the individuals involved in the transaction. Therefore, when the prosecution elicited testimony from Agent Mitchell that the sale was indicative of a transaction between two dealers, the jury could not have been any more prejudiced than it was during McCoy's opening statement. In a sense, McCoy opened the door to this irrelevant testimony, at least to the extent that he could not claim prejudice upon its admission. As such, this Court finds McCoy's argument without merit.

IV. WAS THE SENTENCE GROSSLY DISPROPORTIONATE TO THE CRIMES?
¶ 17. Relying on the United States Supreme Court decision Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), McCoy argues that the trial court was obligated to conduct a hearing and render findings with respect to the gravity of the offense as opposed to the harshness of the penalty. However, McCoy chooses to ignore post-Solem decisions that specifically negate the obligation to perform a proportionality analysis in cases not factually identical to Solem. See Jackson v. State, 740 So.2d 832, 835 (¶ 12) (Miss.1999). As such, we find this argument wholly without merit.
¶ 18. As a general rule, this Court will not disturb a sentence as long *32 as it does not exceed the maximum term permitted by statute. Colenburg v. State, 735 So.2d 1099, 1103 (¶ 12) (Miss.Ct.App. 1999). However, a sentence may be attacked under the Eighth Amendment where it is grossly disproportionate to the crime. White v. State, 761 So.2d 221, 229 (¶ 39) (Miss.Ct.App.2000). Nonetheless, "[d]eclaring a sentence violative of the Eighth Amendment to the U.S. Constitution carries a heavy burden and only in rare cases should this Court make such a finding." Stromas, 618 So.2d at 123.
¶ 19. As the record clearly shows, the trial court followed the sentencing guidelines as set out in the relevant statutes. Under Mississippi Code section 41-29-139(a)(1), McCoy received the maximum penalty of thirty years for each sale of crack cocaine. Under the habitual offender statute, section 99-19-81 of the Mississippi Code, the trial court was obligated to sentence and impose the maximum term of imprisonment for each crime; thus, the statute required the trial court to sentence McCoy to thirty years on each sentence without the opportunity for parole. See Dixon v. State, 812 So.2d 225 (¶ 12) (Miss. Ct.App. 2001) (noting that sentencing standards under habitual offender statute are not discretionary.). Furthermore, because McCoy had already been convicted of a crime relating to drugs, specifically the possession of cocaine, the trial court had the option of doubling McCoy's sentence on each conviction under section 41-29-147. In all, the trial court could have sentenced McCoy to 120 years imprisonment; however, the court opted not to impose the maximum penalty and sentenced McCoy to two concurrent sixty year sentences.
¶ 20. We do not think this is the type of case warranting a proportionality analysis as it involves a defendant who had twice been convicted of a felony one of which pertained to narcotics. Furthermore, we believe a reversal of the trial court's sentence would transgress the authority vested in us; indeed, as the Mississippi Supreme Court noted in Stromas, "[d]rug offenses are very serious, and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature's prerogative, and not this Court's, to set the length of sentences." Stromas, 618 So.2d at 123.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF COUNTS I AND II SALE OF A CONTROLLED SUBSTANCE AND SENTENCE OF SIXTY YEARS EACH WITHOUT THE POSSIBILITY OF PROBATION OR PAROLE, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FINE OF $2,000,000 ON EACH COUNT IS AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY TO ANY SENTENCES PREVIOUSLY IMPOSED AND SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNT I. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS and BRANTLEY, JJ., concur.