763 So.2d 189 (2000)
Ricky BROWN a/k/a `Brown Boy', Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01113-COA.
Court of Appeals of Mississippi.
March 21, 2000.
Rehearing Denied June 20, 2000.
*190 William C. Trotter, III, Belzoni, Attorney for Appellant.
*191 Office of the Attorney General by Dewitt T. Allred, III, Attorneys for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
BRIDGES, J., for the Court:
¶ 1. In December of 1997, Ricky Brown was indicted in the Humphreys County Circuit Court for the armed robbery of Betty Jean Whitaker. The case was tried in one day by a jury of his peers. The instructions given to the jury included the option of finding Brown guilty of the lesser-included-offense of robbery, and the jury exercised that option by returning a guilty verdict on the robbery offense. Displeased with that result, Brown appeals his conviction for robbery and the accompanying sentence of six years in custody of the Mississippi Department of Corrections alleging the following as reversible error at trial:
I. WHETHER THE TRIAL COURT ERRED IN DENYING BROWN'S MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND A NEW TRIAL BASED UPON THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED DURING THE STATE'S CASE-IN-CHIEF
II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF BILLY JOE WESTBROOK
III. WHETHER THE TRIAL COURT ERRED IN EXCUSING TWO JURORS DURING THE COURSE OF THE TRIAL
Finding no reversible error at the trial level, we affirm.

FACTS
¶ 2. On the evening of September 19, 1997, Betty Jean Whitaker walked from her home through an open field to the local Amoco station. On her way to the store, she passed Ricky Brown. They spoke to one another briefly and, as they parted company, Whitaker alleged that Brown turned behind her, grabbed her, and demanded money. When she responded that she did not have any money, Brown allegedly put a small, silver hand gun to her head and threatened her life. Whitaker then testified that Brown physically attacked her and they struggled. During the altercation, Whitaker's pants as well as her shirt were torn. At some point, she screamed for help, and Brown then ran off. Whitaker claimed that Brown took forty dollars in cash and her keys from her front pants' pocket.
¶ 3. Immediately thereafter, Whitaker ran to Trina Carter's house crying and upset. Whitaker told Carter that Brown attempted to rape her and stole forty dollars and her keys. Carter then called the police. When Deputies Shaw and Terry arrived, Whitaker told them that Brown tried to rape her, stole her money and keys, and threatened her life. During cross-examination, it was discovered that in Whitaker's initial statement taken by these two officers, she did not mention Brown by name and in fact, stated that the man she saw in the field that night told her his name was "Mike." It later came to light that her initial written statement failed to mention any stolen personal property and the attempted rape, nor did it mention Carter or any other people she saw that night.
¶ 4. Ricky Brown made a voluntary statement to Chief Deputy Zelie Shaw when he was arrested for armed robbery. Shaw transcribed the statement as Brown gave it. At trial, Shaw read the statement into evidence for Brown. Brown admitted being at the scene of the alleged attack. As he walked through the field after leaving the Amoco, he saw a girl approach while counting her money. Brown stated that the girl was "Betty Jean," and that he slapped her hands as he passed by her. He then stated that she just started hollering rape, and that she was trying to kill *192 him. Brown told Shaw that she fell to the ground, and that he tried to pick her up twice, and that it was then that her clothes ripped. Brown denied carrying a gun, but said he was holding a cigarette lighter with a silver tip in his hand. He denied taking anything from Whitaker and ran off because he was scared. No missing items were recovered.

LEGAL ANALYSIS

I. WHETHER THE TRIAL COURT ERRED IN DENYING BROWN'S MOTIONS FOR A DIRECTED VERDICT, JUDGMENT NOTWITHSTANDING THE VERDICT, AND A NEW TRIAL BASED UPON THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED DURING THE STATE'S CASE-IN-CHIEF
¶ 5. Motions for directed verdict and judgment notwithstanding the verdict challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). The sufficiency of the evidence as a matter of law is viewed in the light most favorable to the verdict. Wetz v. State, 503 So.2d 803, 808 (Miss. 1987). All credible evidence consistent with the defendant's guilt must be accepted as true and the prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. McClain, 625 So.2d at 778. We may reverse "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." Wetz, 503 So.2d at 808. In light of the well known standards cited above, this Court must accept as true the evidence consistent with Brown's guilt. Whitaker placed Brown at the scene of the altercation, and Brown does not deny being there. Whitaker's torn clothes and disheveled appearance were documented by photos entered into evidence. Testimony from the victim and several witnesses outlined for the jury what occurred during the attack and the state of mind of the victim immediately afterward. The jury had Brown's statement and version of events to consider as well as told through the testimony of Deputy Shaw. Viewing the evidence in the light most favorable to the verdict, this Court cannot say that reasonable, fair-minded jurors could only find Brown not guilty.
¶ 6. Brown further argues that the guilty verdict was against the overwhelming weight of the evidence. Decisions regarding new trial motions rest within the sound discretion of the trial judge. McClain, 625 So.2d at 781. A new trial motion should only be granted when the verdict is "so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Wetz, 503 So.2d at 812. We will reverse only for abuse of discretion, accepting as true all evidence favorable to the State. McClain, 625 So.2d at 781. It is the jury's responsibility to weigh and consider all the evidence and to determine who to believe. Id. at 781. In the present case, the jury chose to believe Whitaker's story over Brown's. Taking this evidence and accepting it as true in the light most favorable to the State, the verdict was not against the overwhelming weight of the evidence, and was more than sufficient to support the trial court's denial of the motion for a new trial.

II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF BILLY JOE WESTBROOK
¶ 7. The State argues that this issue is procedurally barred because Brown did not object to the testimony when it was elicited from Westbrook at trial. It has been made eminently clear that trial counsel may not silently observe as objectionable evidence is admitted without voicing disapproval and then raise the issue for the first time on appeal. Cole v. State, 525 So.2d 365, 369 (Miss.1987). If *193 no contemporaneous objection is made, the error, if any, is waived. Cole, 525 So.2d at 369. The record reflects that Brown failed to make a contemporaneous objection. Therefore, the issue is procedurally barred. Procedural bar aside, this Court may review the merits of underlying claims knowing that any subsequent review will stand on the procedural bar alone. Walker v. State, 671 So.2d 581, 587 (Miss.1995).
¶ 8. Billy Joe Westbrook, one of Brown' s cell mates at the Humphrey's county jail, testified at trial on behalf of the State. Westbrook stated that, while incarcerated together, Brown forced him to copy a note onto a separate piece of paper in order to cast the note as an original work in Westbrook's handwriting. Westbrook testified that he copied this note at Brown's behest because Brown threatened his life with a "homemade shank." Westbrook testified that he, in fact, did not hear any part of a conversation between Deputy Blakely and Whitaker on the night in question and that the contents of the note were an elaborate lie.
¶ 9. Brown argues that in allowing the testimony about Brown's threat on Westbrook's life, the trial court committed reversible error. Our supreme court held that "the demeanor, acts, and conduct of the accused, at the time of and subsequent to the crime are in fact relevant, admissible evidence." Williams v. State, 667 So.2d 15, 22 (Miss.1996). There seems to be no argument that the testimony in question is relevant; however, the query cannot end there as relevant evidence is not always admissible. M.R.E. 402. Mississippi Rule of Evidence 403 provides that evidence, though relevant, may be excluded if determined to be too prejudicial, confusing, or needlessly confusing. Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995).
¶ 10. In Foster v. State, the Mississippi Supreme Court stated that if the trial court is presented with a Rule 403 objection, they are to perform the balancing test to determine what prejudicial effect the testimony might have. Foster v. State, 508 So.2d 1111, 1117-18 (Miss.1987). Brown's attorney made a timely objection when the State offered the note into evidence, but made no objection at all to Westbrook's testimony about Brown's threatening his life. Brown's objection at trial as to the admissibility of the note cannot be enlarged on appeal "to embrace an omission not complained of at trial." Brown v. State, 682 So.2d 340, 350 (Miss. 1996). A trial judge will not be found to have erred on a matter which was not presented to him for a decision at trial. Parker v. Mississippi Game and Fish Comm'n, 555 So.2d 725, 730 (Miss.1989) (citing Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 446 (Miss.1989)). The issue is waived on appeal.

III. WHETHER THE TRIAL COURT ERRED IN EXCUSING JURORS FROM SERVICE DURING THE COURSE OF THE TRIAL
¶ 11. Two jurors were excused from service during the course of trial. Only one excusal presents a situation worthy of review. A police officer familiar with the case sitting in the audience noticed Juror Cammie Jones. The police officer believed Jones to be a friend of the defendant's mother. The police officer informed the district attorney, who informed the trial judge. The trial judge talked with Jones and the police officer involved. Jones vehemently denied knowing the defendant's mother in any capacity other than simply recognizing her face. The record reflected that the trial judge believed Jones could serve competently and fairly, but due to the confusion dismissed her anyway. Jones then clearly stated that she did not want to serve on the jury anyway and was surprised that she had been chosen. Again, the State submits that this issue is procedurally barred. Brown never objected at any point during the course of the questioning of either juror by the judge. Without waiving the *194 procedural bar, we proceed with a brief analysis of the issue.
¶ 12. A trial court judge has sound discretion in dismissing a juror for good cause and replacing him/her with an alternate. Stevens v. State, 513 So.2d 603, 604 (Miss.1987). Failure by the trial court to enter into the record specific reasons or good cause shown for the dismissal and replacement of a juror is error, albeit a harmless one. Stevens, 513 So.2d at 605.
¶ 13. The Supreme Court of Mississippi has indicated that a juror will not be removed if there is no showing that the juror cannot be fair and impartial, and therefore decide the case on the evidence and the law. Miss.Code Ann. § 13-5-79 (1972), which deals with competency of jurors, reveals that the only requirement that need be met before the trial court dismisses a juror is that the court must be of the opinion that said person cannot try a case impartially. The statute does not mention any particular procedure or analysis that must be followed to reach this conclusion.
¶ 14. Trial courts in Mississippi do not have "license to remove jurors and replace them with alternates, willy nilly." Myers v. State, 565 So.2d 554, 557 (Miss. 1990). The juror's replacement with the alternate occurred before the jury retired to deliberate. The replaced juror was questioned in the trial judge's chambers in the presence of both the prosecutor and defense counsel. After questioning the juror, the trial judge did not state her reasons for dismissing the juror into the record and indicated further that she had no reason to doubt the juror's story. Inexplicably, she dismissed the seemingly qualified juror anyway. This is an unacceptable practice. We would simply note that any juror who is excused from service must be found to be unable to decide the case fairly and impartially on the merits and that reason, whatever it may be, should always be noted on the record. Finding that the error at trial did not rise to the level of reversal, we affirm the conviction and sentence of the lower court.
¶ 15. THE JUDGEMENT OF THE HUMPHREYS COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND SENTENCE TO SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HUMPHREYS COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.