803 So.2d 479 (2001)
Reggie MITCHELL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00544-COA.
Court of Appeals of Mississippi.
October 2, 2001.
Rehearing Denied January 8, 2002.
*481 Mary A. Brown, Attorney for Appellant.
Office Of The Attorney General, by Deirdre McCrory, Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., LEE, and MYERS, JJ.
LEE, J., for the Court:
¶ 1. The appellant and defendant below, Reggie Mitchell, was indicted in the Circuit Court of Holmes County for the murder of James Wash, pursuant to Miss.Code Ann. § 97-3-19(1) (Rev.2000). His first trial ended in a mistrial. Following a second trial, he was found guilty and sentenced to life imprisonment. Aggrieved by the judgment rendered against him, Mitchell has perfected an appeal to this Court, asserting that: (1) the admission of expert testimony regarding the cause of death was plain error, (2) the prosecution insinuated wrongful conduct when questioning Mitchell without having first established a factual basis for the conduct, and (3) the verdict was contrary to the weight of the evidence or, in the alternative, the evidence was insufficient to support the verdict. Finding no reversible error, we affirm.

EVIDENTIARY FACTS
¶ 2. Reggie Mitchell admits to having shot James Wash on Sunday morning, November 1, 1998; however, he claims that he did so in self-defense. The events leading to this unfortunate incident, which resulted in Wash's death sixteen days later, began when Mitchell was driving his neighbor's car and was asked to go to the store to get beer. With Mitchell was the owner of the car, Ricky Landfair, and Lonnie Grove. As Mitchell approached his house, James Wright, who was with Wash, flagged down Mitchell and asked him to go to the store to buy some beer. Mitchell answered that he would go to the store for two dollars. According to Mitchell, Wash told Mitchell that since Mitchell was not driving his own car, that he had no "sayso", and called Mitchell an "old trick ass n_____." Following this exchange, Mitchell went to the store, purchased the beer, and returned.
¶ 3. In the neighborhood where the events leading to the shooting and the shooting itself took place, three homes are situated side-by-side. The occupants of these homes are related to each other. The first is the abode of Mitchell, which actually belongs to Mitchell's cousin, Robert Landfair. Next door to this house is the mobile home of Marcus Landfair. Adjacent to this is the home of Lucinda Wright, with whom her grandson, Carlos March, lived.
*482 ¶ 4. The argument between Mitchell and Wash resumed upon Mitchell's return from the store. Mitchell testified that when he returned, Wright was in the yard with a baseball bat on his shoulder. Mitchell said that when he went inside his house, Wash yelled at him for twenty minutes. Mitchell then put pepper spray in his pocket and went outside where Wright still had the baseball bat. Lonnie Grove testified that Mitchell sprayed Wash prior to being grabbed and thrown by Wash; however, Mitchell said he sprayed Wash after Wash threw him down. Amidst the bedlam, Mitchell sprayed the pepper spray into his own eyes when he sprayed Wash. Wash had Mitchell in a headlock in Marcus Landfair's yard but let Mitchell go when Carlos March told Wash to let him loose. When Wash released Mitchell, Mitchell went into his house and Wash went into Wright's house where both proceeded to wash off the pepper spray.
¶ 5. About ten minutes later Wash, Wright, Grove, March, and Ricky Landfair were congregated under a tree in Lucinda's back yard when a shot was fired. Wash fell back and was bleeding from the top of his head. At that time Grove, March, and Robert Landfair said they saw Mitchell leave his house from the front and pull off in Ricky Landfair's car. Wash was taken to the hospital where he later died.

ISSUES

I. DID THE ADMISSION OF EXPERT TESTIMONY REGARDING THE CAUSE OF DEATH CONSTITUTE PLAIN ERROR?
¶ 6. Dr. Steven Hayne was stipulated as an expert in the field of forensic pathology. Dr. Hayne had performed the autopsy on Wash and testified unequivocally that Wash died from a gunshot wound to the top of the head. Dr. Hayne stated that the wound produced significant injury to the brain and resulted in Wash's hospitalization for sixteen days, during which he developed bronchial pneumonia and died. Mitchell now argues that because Dr. Hayne did not examine Wash until after his death that Dr. Hayne could not have known if Wash had contracted pneumonia prior or subsequent to his injury. In short, Wash may have been so ill with pneumonia prior to having been shot that he would have died anyway.
¶ 7. Mitchell relies upon M.R.E. 103(d) which permits the notice of plain errors affecting one's substantial rights, though the errors were not brought to the attention of the trial court. Grubb v. State, 584 So.2d 786, 789 (Miss.1991). In Porter v. State, 749 So.2d 250, 261 (¶ 36) (Miss.Ct. App.1999), we recognized that an error is plain if it "affects substantive rights of the defendant." When this Court analyzes a case to determine if plain error has occurred, we must ask if there is anything that "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. This Court must look to see if there was some violation of a legal rule that was "plain," "clear," or "obvious" and whether a violation of such rule was prejudicial on the result of the trial. Id.
¶ 8. Mitchell's argument is premised on the incorrect perception of the legal effect of preexisting, contributing or intervening cause of death. The fact that the actual mechanism of Wash's demise was bronchial pneumonia in no way absolves Mitchell of liability. The law is well settled that where the act of the accused contributed to the death, he is not relieved of responsibility by the mere fact that other factors or causes also contributed to the death of another. Holliday v. State, 418 So.2d 69, 71 (Miss.1982). Dr. Hayne's testimony clearly shows that the gunshot wound directly and materially contributed *483 to Wash's death. Other contributing causes are of no legal consequence.
¶ 9. The cases cited by Mitchell in support of his appeal are inapplicable. First, in this case there was no expert evidence in regard to the cause of death, as was presented in Watts v. State, 210 Miss. 236, 239, 49 So.2d 240, 241 (1950). The evidence presented by the expert in Wild v. Bass, 252 Miss. 615, 627-28, 173 So.2d 647, 651-52 (1965), did not involve an opinion pursuant to having performed an autopsy. Rather, the case concerned an opinion which was based on matters which were not within the expert's own knowledge and which were not in evidence in the case. Id. This is simply not the case sub judice. Dr. Hayne testified that a person in Wash's condition who had received a gunshot wound would have problems clearing secretions and fluids in the lungs and that this would influence the development of pneumonia during hospitalization. Dr. Hayne also noted a tracheoscopy incision on Wash's anterior neck, which he stated also influenced the development of pneumonia. Dr. Hayne certainly did not testify in regard to matters not within his personal knowledge as the court concluded that the expert in Wild did. We find no merit to Mitchell's claim that the admission of this testimony constitutes plain error.

II. DID THE PROSECUTION PREJUDICE MITCHELL DURING CROSS EXAMINATION BY INSINUATING WRONGFUL CONDUCT ON HIS PART WITHOUT HAVING FIRST ESTABLISHED A FACTUAL BASIS FOR HIS CONDUCT?
¶ 10. The defense questioned, on cross-examination, the first two witnesses for the State regarding whether a baseball bat was present when the incident occurred. The presence of a baseball bat had not previously been mentioned in the trial, and we note that it was the defense which introduced the subject as the essence of Mitchell's defense. The State then asked all of its subsequent witnesses who were at the scene of the shooting, including Robert Landfair, if they had seen a bat. These witnesses answered that they had not. After the State rested, Mitchell testified and the State questioned him on cross regarding the bat as follows:
Q: What about the baseball bat? I didn't hear nobody say anything about that.
A: In the last trial, Robert Landfair said he saw that guy with a baseball bat or a stick or something.
Q: No, you know better than that.
A: Oh, yes. Oh yes, he did. He changed his statement in this trial.
Q: The only one who has changed his statement is you.
A: No, my statements are exactly the same, and you've got the transcript to prove it.
Q: I do. I sure do, and we've already gone through the part about the pepper spray and it's not exactly the same....
¶ 11. The most notable feature of this exchange is the absence of an objection. An issue cannot be raised for the first time on appeal. Brown v. State, 763 So.2d 189, 192 (Miss.Ct.App.2000). An error is waived where no contemporaneous objection is made. Id. Furthermore, we will not call plain error to the rescue since it was Mitchell himself who made the first reference to the inconsistent testimony nonresponsively to the State. Mitchell cannot complain on appeal concerning evidence he himself brought to trial. Fleming v. State, 604 So.2d 280, 289 (Miss. 1992).

*484 III. WAS THE VERDICT CONTRARY TO THE WEIGHT OF THE EVIDENCE OR, IN THE ALTERNATIVE, WAS THE EVIDENCE INSUFFICIENT TO SUSTAIN THE VERDICT?
¶ 12. In assessing the legal sufficiency of the evidence on a motion for a directed verdict or a motion for JNOV, the trial judge is required to accept as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, and to disregard evidence favorable to the defendant. Yates v. State, 685 So.2d 715, 718 (Miss.1996). If under this standard sufficient evidence to support the jury's verdict of guilty exists, the motion should be overruled. Brown v. State, 556 So.2d 338, 340 (Miss.1990). A finding that the evidence is insufficient results in a discharge of the defendant. May v. State, 460 So.2d 778, 781 (Miss.1984).
¶ 13. Where the weight of the evidence, as opposed to the sufficiency, is challenged, the jury's verdict is vacated on grounds relative to the weight of the evidence so that a new trial is granted rather than a final discharge. Id. In determining whether a jury verdict is against the overwhelming weight of the evidence, the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will it be disturbed on appeal. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing McFee v. State, 511 So.2d 130, 133-34 (Miss.1987)). The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Sinclair, 438 F.2d 50, 51 n. 1 (5th Cir.1971). Thus, our scope of review on this issue is limited in that all evidence must be construed in the light most favorable to the verdict. Mitchell v. State, 572 So.2d 865, 867 (Miss.1990).
¶ 14. In this appeal, Mitchell seeks relief in the form of a reversal and discharge or, in the alternative, remand to the trial court for a new trial. The former is a consequence of legal insufficiency of the evidence while the latter is the product of an examination of evidentiary weight. May, 460 So.2d at 781. The evidence to be evaluated regarding sufficiency for sustaining a conviction for murder, and the evidence relevant to ascertaining whether the jury's verdict was against the overwhelming weight will be the same in this case; evidence regarding sufficiency requires the court to accept as true all evidence favorable to the State, Yates, 685 So.2d at 718, and evidence regarding weight limits our review to that construed in the light most favorable to the verdict. Mitchell, 572 So.2d at 867.
¶ 15. Mitchell admits that he shot Wash, but he claims he did so in self-defense. The question is whether the evidence supports deliberate design. Malice or deliberate design may be inferred from the use of a deadly weapon. Carter v. State, 722 So.2d 1258, 1263 (Miss.1998). Evidence supporting deliberate design includes the testimony of Lonnie Grove, who testified that Wash was kneeling next to him under a tree with his head down and using a towel, trying to get the pepper spray out of his eyes when he was shot. This is contrary to Mitchell's testimony that Wash was coming toward him in aggression. *485 Grove's testimony was corroborated by that of Ricky Landfair and Carlos March, who were also there. The expert testimony that Wash was shot in the top of his head also corroborates Lonnie Grove's testimony that Wash was kneeling under a tree with his head down when he was shot. Furthermore, inferences could be drawn from the testimony of Officer Harrison, who was called to the scene after the shooting. He testified that the bullet hole in the window screen from which Mitchell shot was at the bottom of the screen and that the bottom of the window was approximately two feet from the floor, inferring that Mitchell knelt when he fired, taking careful aim, as opposed to shooting to simply frighten Wash and Wright, as Mitchell asserted that he did. In addition, there is the voluntary statement made by Mitchell regarding the shooting, which was overheard by Officer Harrison in the jailhouse, where Mitchell stated that he tried to shoot Wash between the eyes.
¶ 16. Nevertheless, Mitchell asserts that he shot from inside his house because Wash was coming toward him in the yard with Wright, who had a baseball bat, and he feared for his safety. The record shows that the only evidence supporting self-defense is Mitchell's testimony. Mitchell and Marcus Landfair were the only defense witnesses and the record does not indicate that Marcus's testimony served to boost Mitchell's defense. Marcus testified he had been asleep and that he got out of bed when he heard a shot and saw Wash on the ground with a baseball bat in front of him. Marcus's testimony was discredited when he inferred that he was familiar with the bat because it was the same bat he used when he played baseball but could not describe it and did not know if it was an aluminum bat.
¶ 17. When taken in light most favorable to the verdict, the evidence is overwhelming that Mitchell aimed and fired at an unarmed victim. Consequently, there exists no basis for disturbing the jury's resolution of the factual issues before it. Hart v. State, 637 So.2d 1329, 1341 (Miss. 1994). We find the evidence sufficient to support the verdict and that the verdict is not contrary to the weight of the evidence.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HOLMES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.